IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SEMINOLE NATION OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-CV-935-L |
| | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**[1]

COMES NOW the Plaintiff, the Seminole Nation of Oklahoma ("Tribe"), amending its original complaint pursuant to Rule 15(a) of the Rules of the Court of Federal Claims[2] and sues Defendant, The United States of America ("Defendant") as follows:

1. This is an action by the Tribe for money damages and other relief against the United States for breaches of statutory, regulatory, and fiduciary duties by the United States, acting by and through Dirk Kempthorne, Secretary of the Interior, Ross Swimmer, Special Trustee for American Indians, and Henry M. Paulson, Secretary of the Treasury, and their predecessors in office and subordinates, as trustees and trustee-delegates of land, mineral resources, and water as well as other assets held by then for the benefit of the Seminole Nation of Oklahoma.

[1] Plaintiff has filed a separate action in the United States District Court for the Eastern District of Oklahoma for declaratory and injunctive relief related to obtaining trust accountings which the Tribe was deemed to have received on December 31, 2000.

[2] The original complaint was filed December 29, 2006; United States has not yet filed an Answer pursuant to the Court ordered stay dated February 27, 2007.

## PARTIES

2. Plaintiff, Seminole Nation of Oklahoma, is a federally recognized Indian tribe, recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of its status as an Indian tribe.

3. Defendant, United States of America, through the Secretary of the Interior, Special Trustee for the Office of Special Trustee for American Indians, and the Secretary of the Treasury is charged with the duties and responsibilities as trustee for the Tribe and the administration of trust funds as well as preparing and maintaining the applicable records in connection with these funds. Defendants are more specifically defined as:

a. Defendant Dirk Kempthorne is the Secretary of the Interior ("Defendant Secretary of the Interior") and charged by law with carrying out the duties and responsibilities of the United States as trustee for the Tribe. Defendant may be served by delivering a copy of the summons and complaint by registered or certified mail to Defendant at Department of the Interior, 1849 C Street NW, Washington D.C. 20240. Consistent with FRCP 4(i)(1), Plaintiff will also serve process to Sheldon J. Sperling, U.S. Attorney for the Eastern District of Oklahoma at 1200 West Okmulgee, Muskogee, Oklahoma 74401 and Alberto R. Gonzales, Attorney General of the United States, at Washington, District of Columbia.

b. Defendant Ross O. Swimmer is the Special Trustee for American Indians, appointed by the President of the United States with the advice and consent of the Senate. Defendant Swimmer's legal duties and responsibilities to the Tribe are detailed in the Act of October 25, 1994, Pub. L. No. 103-416, 108 Stat. 4239. Defendant may be served by

delivering a copy of the summons and complaint by registered or certified mail to Defendant at Department of the Interior, 1849 C Street NW, Washington D.C. 20240. Consistent with FRCP 4(i)(1), Plaintiff will also serve process to Sheldon J. Sperling, U.S. Attorney for the Eastern District of Oklahoma at 1200 West Okmulgee, Muskogee, Oklahoma 74401 and Alberto R. Gonzales, Attorney General of the United States, at Washington, District of Columbia.

c. Defendant Henry Paulson is the Secretary of the Treasury, and in that capacity is the custodian of tribal trust funds, and has responsibility with regard to the administration of such funds and the preparation and maintenance of records in connection with those funds. Defendant may be served by delivering a copy of the summons and complaint to the United States attorney for the district in which the action is brought, to the Attorney General of the United States, and to the officer of the United States. Defendant may be served by delivering a copy of the summons and complaint by registered or certified mail to Defendant at Department of the Treasury, 1500 Pennsylvania Avenue NW, Washington D.C. 20220. Consistent with FRCP 4(i)(1), Plaintiff will also serve process to Sheldon J. Sperling, U.S. Attorney for the Eastern District of Oklahoma at 1200 West Okmulgee, Muskogee, Oklahoma 74401 and Alberto R. Gonzales, Attorney General of the United States, at Washington, District of Columbia.

d. "Defendant" collectively encompasses the United States and all the parties associated therewith, including the United States, the Department of Interior, Special Trustee for American Indians, and the Department of Treasury.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1491 and 1505 as the United States is Defendant in this claim for which the Tribe seeks monetary relief for the asserted claims.

5. The United States has waived its sovereign immunity under 28 U.S.C. §§ 1491 and 1505. *See, United States v. Mitchell*, 469 U.S. 206, 228 (1983).

6. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and (e)(2) because this is an action in which Defendant are officers and employees of the United States acting in an official capacity, and a substantial part of the events or omissions giving rise to the claims herein have occurred within this judicial district.

## FACTUAL BACKGROUND

7. The Tribe occupies the Indian country within its former reservation in Seminole County, Oklahoma, and is the beneficial owner of land and natural resources, including valuable oil, gas, water and other mineral reserves attributable to its former reservations in Oklahoma and elsewhere, subsequently allotted lands and current land holdings, title to which is held in trust by the United States for the benefit of the Tribe ("Trust Property"). For purposes of this litigation, "Trust Funds" are defined as any income generated in any manner related to the Trust Property and that falls within the management obligations pursuant to the federal statutory and common law jurisdiction of Defendant.

8. The Tribe is recognized as one of the aboriginal groups of people which existed in what became the state of Florida since pre-1600s. The Tribe can trace its history and ancestry to this pre-1600s time period. The Tribe remained a prominent

Tribe, well known in the area until the United States took formal possession of Florida in 1821 after entering into a treaty with Spain in 1819.

9. In 1823, the United States and the Tribe entered into a treaty. Under the treaty the Tribe ceded its claims to Florida and the United States purportedly compensated the Tribe by allotting a reservation in south-central Florida. In 1827, by treaty, the Tribe enlarged their reservation. In 1835, the Tribe was forced to immigrate to the Indian Territory under the threat of federal troop enforcement.

10. In 1897, the United States Congress passed the Dawes Act and set up the Dawes Commission. The Dawes Commission was required by the Curtis Act to reach an agreement with the Five Civilized Tribes for the purpose of the allotment of land. The Dawes Commission and the Tribe reached what is known as the "Original Seminole Agreement." The agreement acknowledged individual allotments were not adequate and not fair compensation for the Nation. The Agreement provided for the creation of fund to equalize the Agreement. The fund would receive money from one half (1/2) of all mineral interests harvested from the allotted lands.

11. The Tribe did not receive adequate compensation for the land, mineral resources and water taken by the United States. Any agreement which may have been entered into between the Tribe and the United States was unfair, unjust and did not adequately compensate the Tribe for the relinquished lands and natural resources.

12. In 1908, Congress, without the knowledge of the Tribe, revoked the one half (1/2) mineral interest of the Tribe. Shortly after the revocation of mineral interests, tremendous and very profitable oil production development took place in Seminole

County. Estimates of the Tribe's potential mineral claims have been valued in excess of one hundred million dollars ($100 million).

13. In addition to the mineral interests of the allotted lands, the Tribe is entitled to any and all proceeds from the water rights as they relate to the land as well as an interest in the future decisions regarding the use and sale of the water and/or water rights.

14. The United States manages multiple trust accounts for the Tribe. The United States manages multiple accounts for the Tribe from proceeds of lands once owned by the Tribe. The Tribe also has multiple accounts for Judgment funds received from actions against the United States. "Judgment funds" refers to those trust accounts established for the deposit of monetary awards to the Tribe.

15. For example, in 1958, the Indian Claims Commission awarded the Tribe thirty four thousand fifty three dollars and sixty six cents ($34,053.66) for disbursements made by the United States which were not for the gratuity of the Tribe but were disbursed from the funds for which the United States is responsible for managing.

16. In 1970, the Indian Claims Commission awarded the Tribe twelve million three hundred forty seven thousand five hundred dollars ($12,347,500) to compensate the Tribe for the payment of the unconscionable amount of one hundred fifty two thousand five hundred ($152,500) for land worth in excess of twelve million dollars ($12 million) in the early nineteenth century.

17. The above mentioned examples of Judgment funds are by no means exhaustive. The United States holds additional trust fund accounts for the Tribe not

mentioned above. All documentation regarding the trust accounts is in the possession of the United States as proper accountings have not been provided to the Tribe.

18. Under federal law, tribal land held in trust by the United States is inalienable except as authorized by Congress. 25 U.S.C. § 177. Congress has granted the Secretary of the Interior authority to approve conveyances of certain interests in trust land, such as leases, easements and rights of way. The law further establishes the terms and conditions under which such conveyances may be made, and generally requires that compensation be paid to the tribe for the use of tribal lands.

19. Under 25 U.S.C. § 2 and other federal laws, Congress has granted the Secretary of the Interior certain limited authority to withdraw certain of the Tribe's lands for federal and private purposes, including, but not limited to, educational, religious, and governmental uses. Federal law also establishes that terms and conditions under which such withdrawals may be made, and when the land is to be returned to tribal use. Federal law generally requires that compensation be paid to the Tribe for the conveyance or use of said tribal lands.

20. The Tribe entered into treaties, settlements, and other contractual agreements with Defendant pursuant to which Defendant took possession of certain of the Tribe's lands, mineral resources and water as well as other valuable resources. When Defendant took possession of those lands, mineral resources and water it obligated itself to provide specific consideration to the Tribe. As stated in those agreements, consideration often included money and/or goods and services which were to be provided by Defendant to the Tribe and its members. Congress appropriated federal funds to pay consideration to the Tribe and those appropriated dollars became the trust property of the

Tribe managed by Defendant until consideration was delivered. The Tribe has never received proper recompense for the failure of the United States government to adequately exercise its fiduciary obligations relative to the assets of the Tribe which it has managed.

21. When Defendant Secretary of the Interior and his predecessors took office they assumed control and management over the Trust Property of the Tribe. Defendant approved on behalf of the Tribe the following: leases, easements, permits, and other grants of authority to use certain of the Tribe's trust lands and natural resources for specific purposes. Defendant in certain limited instances has conveyed the title to certain of the Tribe's lands to third parties and has approved the use of certain of the Trust Property of the Tribe for Federal purposes. In the exercise of its trust authority, Defendant assumed the legal responsibility for the collection of fair and equitable compensation for those conveyances or uses which include, but not limited to, royalty payments, grazing fees, rents, purchase prices, and such other fees and payments as appropriate.

22. Defendant assumed the responsibility for the collection of payments described above and assumed the responsibility for the investment of the controlled assets, including the trust assets, the income generated by the Trust Property of the Tribe, and trust resources and by the other trust monies paid to the Tribe.

23. Defendant has assumed the obligations of a trustee by virtue of holding tribal land in trust. *United States v. Mitchell*, 463 U.S. 206, 255 (1983); *Cobell v. Norton*, 240 F.3d 1081(D.C. Cir. 2001). As trustee, Defendant has a fiduciary relationship and obligations of the highest responsibility and trust to administer the trust with the greatest skill and care possessed by the trustee. Defendant has charged itself

with moral obligations of the highest responsibility and trust in its conduct with Indian tribes and its conduct should therefore be judged by the most exacting fiduciary standards. *Cobell*, 240 F.3d at 1099 (quoting *Seminole Nation v. U.S.*, 316 U.S. 286, 297(1942)).

24. Additionally, the trust obligations of Defendant include the duty to ensure that tribal trust property and trust funds are: (A) protected; (B) preserved; and (C) managed so as to produce a maximum return to the tribal owner consistent with the trust character of the property.

25. The trust obligations of Defendant also include the following duties: (A) to maintain adequate systems and controls to guard against error or dishonesty; (B) to refrain from self-dealing or benefiting from the management of the trust property; (C) ensure the Federal government's compliance with the protections afforded the Tribe under the Constitution; and (D) to consult with the Tribe regarding the management of the Trust Property of the Tribe.

26. Congress has charged Defendant with fulfilling the obligations of trustee and with responsibility for the administration and management of all Trust Property of the Tribe. *See,* 25 U.S.C. § 2; *Mitchell*, 463 at 255; *Cobell*, 240 F.3d 1081.

27. As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, massive and long-standing problems exist with Defendant's administration of Indian trust funds. After a series of oversight hearings regarding the Department of the Interior's management of Indian trust funds, Congress issued a report condemning those practices. *See, Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund*

H.R. Rpt. 102-499, 102 Cong. 2d Sess. (1992)(Congress noted that numerous reports prepared by the Interior Department's Inspector General, the General Accounting Office and the Office of Management and Budget have documented significant and habitual problems with the management of tribal trust monies). These reports have also documented a persistent failure to adhere to the duties and obligations the law imposes on a trustee, as well as a consistent pattern of refusing or ignoring directives to correct these problems and a history of inaction and incompetence in the management of these assets. *See, Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund* H.R. Rpt. 102-499.

28. Congress concluded that the Bureau of Indian Affairs has failed to manage and invest funds of tribes in the manner required by law. *See,* H.R. Rpt. 102-499, 102 Cong. 2d Sess. (1992).

29. Upon information and belief, this mismanagement by Defendant and this lack of a basic ability to manage these funds on behalf of the Tribe has resulted in losses to the Tribe, a trust beneficiary.

30. On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under the provisions of this Act, the Congress recognized the pre-existing trust responsibilities of the United States, and charged Defendant with additional responsibilities to ensure the proper discharge of their individual trust responsibilities, as well as the trust responsibilities of the United States.

31. The Trust Reform Act requires the Special Trustee for American Indians to ensure that the Bureau of Indian Affairs ("BIA") establishes appropriate policies and

procedures and develops necessary mechanisms which allow it to: (1) property to account for and invest, as well as **maximize**, in a manner consistent with the statutory restrictions imposed on the Secretary's investment options, the **return** on the investment of all trust fund monies; and (2) to prepare accurate and timely reports to account holders (and others, as required) on a periodic basis regarding all collections, disbursements, investments and return on investments related to their accounts. 25 U.S.C § 4043(b)(2)(B) (emphasis added).

32. The United States is obligated as the fiduciary to conform with general trust standards in managing and investing Indian trust funds.

33. The Untied States must seek to maximize the total return on the investment of Indian trust fund monies, including capital appreciation and gain as well as trust accounting income. *See* Restatement (Third) of Trusts, § 227 (1992).

34. On information and belief, the United States has not established appropriate policies and procedures, and developed necessary systems, that will allow it to maximize the total return on the Indian trust funds for which it is responsible for investing.

35. The United States continues to take an investment approach that results in widespread and ongoing failure to realize capital gains or to limit capital losses. Regardless of the result, the United States maintains its strong preference for managing Indian trust funds by simply buying securities and holding them until maturity.

36. On information and belief, the United States has not established policies, procedures or systems that are necessary to: (1) monitor all Indian trust fund portfolios on an ongoing basis to evaluate capital gains and losses; and (2) determine on an ongoing

basis and in a timely manner whether to change or reposition portfolio holdings so as to maximize total return.

37. On information and belief, the United States has not adopted a meaningful, consistent and realistic "total return" approach to investment of Indian trust funds nor has it engaged in strategic diversification of trust fund portfolio holdings for the purpose of maximizing the total return.

38. The ongoing failure of the United States to employ a realistic and meaningful "total return" approach to the invest of the Tribe's trust funds will continue to cause additional and substantial loss to the Tribe as long as it continues.

39. As evidenced by reports issued by the Interior Department's Inspector General, the General Accounting Office, and the Office of Management and Budget, among others, notwithstanding the foregoing Acts of Congress, Defendant has continued to fail to implement the reforms required by law and has stifled the Special Trustee for American Indians efforts to perform his legal obligations.

40. To date, Defendant has failed to meet its other statutory and legal obligations to the Tribe. Thus, Defendant is in clear breach of their trust responsibility to the Tribe.

41. Since 1990 Congress has consistently extended the statute of limitations on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss in order to protect the rights of the Tribe and other tribes until an accounting of the trust funds could be completed. *See,* Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13,

1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381,106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat 1341; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63.

42. Under the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §4044, the tribes must file claims no later than six years after they had received their respective tribal trust fund reconciliation project report related to Defendant's failure of its fiduciary obligations. Congress extended this original deadline in Pub. L. No. 107-153 and again in Pub. L. No. 109-138. The statute of limitations for filing a claim is currently December 31, 2006, under the most recent statutory extension passed by Congress.

## COUNT I – MONETARY RELIEF RESULTING FROM THE UNITED STATES' BREACH OF FIDUCIARY DUTY WITH RESPECT TO THE MANAGEMENT OF THE TRIBE'S LAND

43. Paragraphs 1 through 42 above are alleged and incorporated herein by reference. The Tribe further alleges and states:

44. Defendant has maintained a regulatory framework for the control over the management of the Tribe's land held in trust by Defendant. This includes but is not limited to the negotiation of easements, rights of way, and leases.

45. As trustee, Defendant has entered into and approved leases, easements and rights of way to permit third parties to utilize the resources of the Tribe. Compensation for these interests and payments for the use of such resources are to be paid to Defendant as trustee for the Tribe. Such funds must be collected and deposited in the United States Treasury in trust for the benefit of the Tribe.

46. As trustee, Defendant was required to enter into such agreements for not less than fair market value. However, upon information and belief, Defendant breached its duty by failing to negotiate such interests for fair market value and failing to collect fair and reasonable compensation for the benefit of the Tribe.

47. The Tribe is entitled to monetary damages against Defendant arising from its mismanagement of the Tribe's land in an amount to be proven at trial plus interest as allowed by law.

**COUNT II – MONETARY RELIEF ARISING FROM THE UNITED STATES' BREACH OF FIDUCIARY DUTY WITH RESPECT TO DEPOSIT AND INVESTMENT TRUST FUNDS**

48. Paragraphs 1 through 47 above are alleged and incorporated herein by reference. The Tribe further alleges and states:

49. Defendant, as trustee, maintained control over the management and investment of funds held in trust for the benefit of the Tribe, including proceeds from leases, permits, easements and rights of way and other general tribal funds. Defendant has undertaken the highest fiduciary obligations to invest trust funds as a prudent investor would exercise under the same or similar circumstances. In addition, Defendant is under and obligation to comply with federal statutes governing the investment of tribal trust

assets. *See,* 25 U.S.C. 161a, 161b, 162a, 611 *et seq.*; applicable regulations; *Osage Tribes of Okla. v. U.S.,* 72 Fed. Cl. 629, 662 (2006).

50. Defendant breached its fiduciary duty to the Tribe by holding amounts of trust funds in cash, in excess of liquidity needs. As a result, the Tribe has been damaged by reason of the loss of investment of funds at a higher rate of return.

51. Defendant breach its fiduciary duty to the Tribe by failing to maximize trust income as a prudent investor. *Cheyenne-Arapaho Tribes v. U.S.*, 512 F.2d 1390, 1394 (1975). Defendant was under a strict fiduciary duty to place trust funds in eligible investment with higher yields than low rates of return when other investments are available. By reason of this breach of fiduciary duty, the Tribe has been damages in an amount equal to the difference between what interest Defendant paid for such funds and the available maximum the funds could have earned if properly invested.

52. The Tribe is entitled to monetary damages for the breach of fiduciary duty by Defendant in an amount as may be proven at trial plus interest as allowed by law.

## COUNT III – MONETARY RELIEF ARISING FROM THE UNITED STATES' BREACH OF FIDUCIARY DUTY WITH RESPECT TO THE MANAGEMENT OF JUDGMENT FUNDS

53. Paragraphs 1 through 52 above are alleged and incorporated herein by reference. The Tribe further alleges and states:

54. Judgments obtained against the United States have been held in trust by Defendant for the benefit of the Tribe. Defendant through statutes and regulations maintains control over the management, distribution, and investment of such funds. Defendant is charged with exercising the highest fiduciary duty in managing these trust

assets. *See, Chippewa Cree Tribe of the Rocky Boy's Reservation v. U.S.*, 69 Fed. Cl. 639, 656 (2006).

55. Because Defendant has failed to invest the principal and earning of the funds held in trust in a timely manner, Defendant has breached its fiduciary duty owed to the Tribe.

56. The Tribe is entitled to monetary damages for the breach of fiduciary duty by Defendant in an amount as may be proven at trial plus interest as allowed by law.

**COUNT IV- MONETARY JUDGMENT ARISING FROM THE TAKING OF THE TRIBE'S ABORIGINAL LANDS**

57. Paragraphs 1 through 56 above are alleged and incorporated herein by reference. The Tribe further alleges and states:

58. The Tribe is entitled to a judgment that the monies paid constitutes an inadequate amount as to be unjust for the compensation to the Tribe for its reservation land.

59. The Tribe is entitled to a monetary judgment in the amount of the difference between the price paid to the Tribe and the proper consideration plus interest.

**COUNT V- MONETARY JUDGMENT ARISING FROM THE TAKING OF THE TRIBE'S NATURAL RESOURCES, INCLUDING, BUT NOT LIMITED TO MINERAL AND WATER RIGHTS**

60. Paragraphs 1 through 59 above are alleged and incorporated herein by reference. The Tribe further alleges and states:

61. The Tribe is entitled to a judgment that the monies paid constitutes an inadequate amount as to be unjust for the compensation to the Tribe for its right to the natural resources on its land, including but not limited to the mineral and water rights.

62. The Tribe is entitled to a monetary judgment in the amount of the difference between the price paid to the Tribe and the proper consideration plus interest.

## COUNT VI—JUDGMENT IN FAVOR OF THE TRIBE

63. Paragraphs 1 through 62 above are alleged and incorporated herein by reference. The Tribe further alleges and states:

64. The Tribe is entitled to a monetary judgment in favor of the Tribe in such amount that may be shown as a result of the breach of fiduciary duties for the above mentioned reasons.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays:

1. For a declaration that Defendant is liable to the Tribe in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty;

2. For a determination of the amount of damages due to the Tribe, plus all interest as allowed by law;

3. For an order directing Defendant to manage all of current and future Trust Funds, Trust Property and Trust resources in full compliance with all applicable law and with their duties as the Tribe's guardian and trustee.

4. For an award of the cost of the suit, without limitation, attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable federal

statues, and under general principals of law and equity, and the fees and costs for expert assistance.

5. For such other and further relief, both at law and in equity, to which the Tribe is or may show itself entitled.

s/ Sandra Benischek Harrison
Sandra Benischek Harrison, OBA #18647
Counsel of Record
Timothy M. Larason, OBA #5239
Michael D. McMahan, OBA #17317
Jennifer Henshaw McBee, OBA #19170
Jacquelyn V. Duffy, OBA #21630
Of Counsel
ANDREWS DAVIS
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELLORS AT LAW
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Telephone: (405) 272-9241
Fax: (405) 235-8786
www.andrewsdavis.com

ATTORNEYS FOR PLAINTIFF
SEMINOLE NATION OF OKLAHOMA

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2008, I electronically transmitted the attached document to the Clerk of U.S. Court of Federal Claims using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Terry Petrie and Anthony P. Hoang
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

s/ Sandra Benischek Harrison

**207642.1**