# EXHIBIT 10:

# MEMORANDUM OF STEVEN GRILES REGARDING PRESERVATION OBLIGATIONS

# JULY 9, 2004

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

JUL 9 2004

Memorandum

To: All Employees

From: J. Steven Griles, Deputy Secretary

Subject: Responsibility for Maintaining Electronic-Mail (E-mail) Records

This memorandum is to remind all employees and Federal contractors of their responsibility for preserving, protecting and maintaining official records created or received using electronic mail (e-mail). IRM Bulletin 96-06, 7/25/96, Policy and Guidance for Managing the Creation, Retention, and Disposition of Electronic Documents provides Department-wide policy and guidance for managing electronic records (including e-mail records). This policy is accessible at www.doi.gov/ocio/records/policy/policies.htm.

Current policy based on National Archives and Records Administration regulations (36 CFR Part 1234.24, Standards for Managing Electronic Mail Records) requires that all **official electronic records should be printed out in hard copy and filed in the official paper recordkeeping system.** Only after this is done can you delete the electronic version, if you no longer need the electronic version.

**Official Records:** E-mail documents ARE official records when they:

- Are created or received in the transaction of agency business and
- Are appropriate for preservation as evidence of the government's function and activities; or
- Are valuable because of the information they contain

**Not Official Records:** E-mail documents ARE NOT official records when they:

- Provide no evidence of agency functions and activities
- Lack information of value
- Duplicate information already documented in existing records

If an e-mail message meets the above criteria as an official record, the message **(including all attachments and transmission information)** must be printed to paper and filed according to the agency's recordkeeping system.

REVRFP013_2OSTABQ0027001546

__Special Instructions – Cobell:__ Because of the __Cobell v. Norton__ litigation, special instructions apply for printing and deleting e-mail messages related to this case. Included in electronic records that must be printed and filed are all e-mail messages (with all attachments) that relate to:

- __Cobell v. Norton__ litigation
- American Indian trust reform activities
- Administration of Individual Indian Money (IIM) accounts

**E-mail messages relating to one of these three areas may be electronically deleted only after you have been notified by either your e-mail system administrator or your CIO that your regular system backup or another approved method has captured the electronic copy.**

Supervisors and managers must ensure that all employees and others who may handle Federal records (including contractors, interns, students, and volunteers) receive this memorandum and are complying with this policy. If you have additional questions about this guidance, please contact your bureau/office Records Officer first, and, if questions remain, contact the Departmental Records Officer, Mr. Ed McCeney, at (202) 208-3321.

# EXHIBIT 11:

# MEMORANDUM OF

# STEVEN GRILES

# REGARDING

# PRESERVATION

# OBLIGATIONS

# JULY 13, 2004

Ted Richardson 07/13/2004 07:06

To: OHA-All
cc:

Subject: ALL EMPLOYEE MESSAGE Nationwide - Responsibility for Maintaining Electronic-Mail (E-mail) Records

(Supervisors, please ensure that employees without access to e-mail receive a paper copy of this message.)

Memorandum

To: All Employees

From: J. Steven Griles, Deputy Secretary /s/

Subject: Responsibility for Maintaining Electronic-Mail (E-mail) Records

This memorandum is to remind all employees and Federal contractors of their responsibility for preserving, protecting and maintaining official records created or received using electronic mail (e-mail). IRM Bulletin 96-06, 7/25/96, Policy and Guidance for Managing the Creation, Retention, and Disposition of Electronic Documents provides Department-wide policy and guidance for managing electronic records (including e-mail records). This policy is accessible at www.doi.gov/ocio/records/policy/policies.htm.

Current policy based on National Archives and Records Administration regulations (36 CFR Part 1234.24, Standards for Managing Electronic Mail Records) requires that all official electronic records should be printed out in hard copy and filed in the official paper recordkeeping system. Only after this is done can you delete the electronic version, if you no longer need the electronic version.

Official Records: E-mail documents ARE official records when they:

- Are created or received in the transaction of agency business and
- Are appropriate for preservation as evidence of the government's function and activities; or
- Are valuable because of the information they contain

Not Official Records: E-mail documents ARE NOT official records when they:

- Provide no evidence of agency functions and activities
- Lack information of value
- Duplicate information already documented in existing records

If an e-mail message meets the above criteria as an official record, the message (including all attachments and transmission information) must be

REVRFP013_2OHABIL0022000059

printed to paper and filed according to the agency's recordkeeping system.

Special Instructions – Cobell: Because of the Cobell v. Norton litigation, special instructions apply for printing and deleting e-mail messages related to this case. Included in electronic records that must be printed and filed are all e-mail messages (with all attachments) that relate to:

- Cobell v. Norton litigation
- American Indian trust reform activities
- Administration of Individual Indian Money (IIM) accounts

E-mail messages relating to one of these three areas may be electronically deleted only after you have been notified by either your e-mail system administrator or your CIO that your regular system backup or another approved method has captured the electronic copy.

Supervisors and managers must ensure that all employees and others who may handle Federal records (including contractors, interns, students, and volunteers) receive this memorandum and are complying with this policy. If you have additional questions about this guidance, please contact your bureau/office Records Officer first, and, if questions remain, contact the Departmental Records Officer, Mr. Ed McCeney, at (202) 208-3321.

# EXHIBIT 12:

# MEMORANDUM OF STEVEN GRILES REGARDING PRESERVATION OBLIGATIONS

# OCTOBER 26, 2006

In addition, the Government moved for reassignment of this case to a different district court judge on August 15, 2005. The United States Court of Appeals granted the motion on July 11, 2006. The plaintiffs have begun the procedural process to ask the Supreme Court to review the reassignment decision. Accordingly, the order granting reassignment is not final at this time and the case has not yet been reassigned.

If you have questions regarding compliance with ongoing court orders, please contact your supervisor or the Office of the Solicitor.

# EXHIBIT 13:

## MEMORANDUM OF UNDERSTANDING BETWEEN THE DEPARTMENT OF THE INTERIOR AND THE NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## SEPTEMBER 12, 2003

**Memorandum of Understanding Between**

**The Department of the Interior and**

**The National Archives and Records Administration**

**Regarding an American Indian Records Repository**

**Located at NARA's Lenexa, Kansas, Regional Records Services Facility**

A Memorandum of Understanding (MOU) is made and entered into between the Department of the Interior (DOI) and the National Archives and Records Administration (NARA) for the purpose of consolidating and preserving on a continuing and long-term basis designated Indian records in the possession of DOI's Bureau of Indian Affairs (BIA) and the Office of the Special Trustee for American Indians (OST), and related DOI fiduciary trust records, as jointly agreed to, at NARA's regional records services facility in Lenexa, Kansas.

**Article I. Background and Objectives**

A. Within DOI, the mission of the BIA is to fulfill its trust responsibilities and promote self-determination for American Indian Tribes, individual American Indians and Alaska Natives (hereinafter collectively referred to as American Indians). BIA develops and implements, in cooperation with Tribal governments, Native American organizations, other federal agencies, state and local governments, and other interested groups, economic, social, educational and other programs for the benefit and advancement of American Indians.

B. Within DOI, OST was established to oversee and coordinate reforms within DOI of practices relating to the management and discharge of the Secretary's trust responsibilities to American Indians.

C. DOI, pursuant to the American Indian Trust Fund Management Reform Act of 1994 (1994 Act) and prior laws, is charged with management of the U.S. Government's trust responsibilities to American Indians, including with respect to records management. DOI established the Office of Trust Records in 1999 to develop and implement a program for the economical and efficient management of trust records, consistent with the 1994 Act, the Federal Records Act, other statutes and their implementing regulations.

D. A core mission of NARA is to assist agencies in the management of their records from the time those records are created, in order to ensure that essential documentation is available to the U.S. Government, today's citizens, and future generations. Pursuant to the Federal Records Act at 44 U.S.C. 2107, when it appears to the Archivist of the United States to be in the public interest, NARA will accept for deposit the records of a federal agency that have sufficient historical or other value to warrant their continued long-term preservation by the United States

Government. Additionally, through its Records Center Program, NARA provides secure, cost-efficient storage and servicing of non-active agency records in facilities that are compliant with 36 C.F.R. Part 1228, Subpart K.

E. NARA's new regional records services facility in Lenexa, Kansas (the Lenexa facility), can accommodate the archival storage of records in accordance with strict NARA facility standards for the preservation of archival records. The Lenexa facility has sufficient future capacity to hold all of the records of the American Indian Records Repository within the scope of the present MOU.

F. DOI and NARA jointly believe that it is in the public interest to consolidate designated, non-active Indian records, presently in the custody of DOI, in the Lenexa facility managed by NARA. It is in the further interest of all parties that the proposed consolidation include Indian records presently stored in NARA's regional records services facility in Lee's Summit, Missouri.

G. Haskell Indian Nations University (Haskell University), located in Lawrence, Kansas, is an accredited four-year college operated and funded by the BIA, with a core mission of being a national intertribal center for teaching, extension and research related to the study of American Indian Nations culture and affairs.

H. DOI and NARA agree that it is in the public interest for Haskell University to develop an archival and records management studies program. The resulting educational, outreach, and training programs to be conducted by the faculty and staff of Haskell University can lend support to the management of Indian records stored at NARA's Lenexa facility.

### Article II. Authority

Authority for NARA to enter into this MOU is contained in the Economy Act, 31 U.S.C. 1535, the Federal Records Act, 44 U.S.C. 2107 and 2907, and NARA's Records Center Revolving Fund authority, Pub. L. 106-58, Title IV, 113 Stat. 460-61 (1999), codified at 44 U.S.C. 2901 note. The authority for DOI to enter into this MOU is contained in the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. 4001, *et seq.*, the Federal Records Act, 44 U.S.C. 3101, *et seq.*, and the Duties of the Commissioner of Indian Affairs, 25 U.S.C. 2.

### Article III. Framework of the Agreement

A. NARA agrees to:

1. Establish an "American Indian Records Repository" at NARA's Lenexa facility within the framework of NARA's existing regulations governing regional records center facilities, 36 C.F.R. Part 1228. The American Indian Records Repository will consist of a consolidated collection of non-active Indian records currently residing in the legal and physical custody of DOI, which warrant continued preservation by the U.S. Government in order to

document rights and entitlements, the actions of government, and the national experience. Records to be transferred from DOI to NARA for inclusion in the American Indian Records Repository at the Lenexa facility will be as specified in a series of records transfers, as jointly agreed to by NARA and DOI, utilizing Standard Forms (SF's) 135 and 258. These transfers will be made in accordance with and pursuant to existing and future SF-115 records schedules governing the retention of records, consistent with NARA's practices and policies.

2. Relocate to the American Indian Records Repository at the Lenexa facility Indian records presently stored at NARA's Lee's Summit regional records services facility.

3. Preserve the integrity of the records collection in the American Indian Records Repository by maintaining these records as a separate entity within the Lenexa facility.

4. Build storage space at DOI's request and maintain records within the American Indian Records Repository at the Lenexa facility in accordance with NARA 1571, "Archival Storage Standards," which establishes structural, environmental control, fire safety, preservation, and security standards for appropriate archival storage conditions in NARA archival facilities, or any superseding guidance as authorized and approved by the Archivist.

5. Assist DOI in establishing a program to manage and provide continuing access to Indian records in electronic formats, including at the Lenexa facility.

6. Provide, upgrade, and/or build all facilities necessary at the Lenexa facility to support use of the American Indian Records Repository by DOI staff and contractors, Haskell University faculty and students, and other researchers, including a research room, work spaces, offices, conference room, copying equipment rooms, and additional space as required.

7. Provide for servicing of records in the American Indian Records Repository to DOI staff and to persons authorized by DOI (including Haskell University faculty, staff, and students), in accordance with applicable federal law, and NARA Records Center Program policies and practices.

8. Provide that for any records that have been transferred into the legal custody of NARA pursuant to an SF-258, questions on access to records in the American Indian Records Repository will be referred to the Archivist of the United States or his designated NARA representative.

9. Restrict access to original documents for reference purposes when those documents have been satisfactorily reproduced on microfilm and reference prints or other media are available.

10. Upon request, appropriate NARA components will, in accordance with NARA regulations, make available to researchers at the Lenexa facility copies (including, as appropriate, microfilm copies or scanned images) of existing Indian records in NARA's regional and

Washington, D.C., national headquarters archival collections. Copies of all such requested records will also be incorporated into the American Indian Records Repository at the Lenexa facility.

11. Foster an affiliated relationship with Haskell University, including authorizing NARA staff to participate, to the extent permitted by Federal law, in educational, outreach, and training programs involving DOI and Haskell University, and including NARA support of work-study employment, internships, and similar opportunities for Haskell University students to work at the American Indian Records Repository.

B. DOI agrees to:

1. Until such time as records are transferred to the Lenexa facility, continue to be responsible for the care and preservation of both inactive and current records in its physical custody.

2. Transfer agreed-upon collections of existing Indian records presently in the physical custody of DOI to NARA's Lenexa facility when no longer active or current, for continued maintenance in the American Indian Records Repository, in accordance with applicable NARA regulations and guidance, and in compliance with applicable court orders and DOI record move requirements.

3. Provide adequate funding for the establishment and maintenance of an American Indian Records Repository at the Lenexa facility, including (a) payment of fees for the storage and servicing of records at the facility in accordance with the provisions of NARA's Records Center Revolving Fund; b) reimbursement to NARA for the cost of moving the present collection of Indian records at Lee's Summit to Lenexa, in accordance with III.A.2, *supra*; (c) funding, upon DOI approval, for research room, work spaces, and other office space facilities associated with the American Indian Records Repository, as specified in III.A.6, *supra*; (d) funding, upon DOI approval, for NARA staff costs associated with the educational, outreach, and training programs contemplated under III.A.11, *supra*; and (e) funding, upon DOI approval, for other costs to NARA that arise in connection with continued usage and maintenance of the records within the American Indian Records Repository.

4. Subject to the availability of funds and resources and within existing laws and regulations, will work jointly with Haskell University to identify and create a series of programs and projects involving the study of and continued preservation of Indian records within the American Indian Records Repository at the Lenexa facility. These programs and projects, which will also involve utilization of NARA staff, are expected to include (but would not be limited to): providing for a general program of education, including training seminars and workshops, internships and other work study opportunities; conservation activities of archival materials, including holdings maintenance and preservation copying; archival description and reference functions; and public programs, exhibits and publications.

C. The parties agree:

1. That this MOU will terminate in the event of a lack of funding by DOI of the operations of the American Indian Records Repository, as specified in Article III.B.3, *supra*, or upon 180 days notice of either party.

2. That nothing in this agreement may be construed to obligate either party to any current or future expenditure of resources in advance of the availability of appropriations from Congress. This agreement does not obligate either party to spend funds on any particular project or purpose, even if funds are available. The parties will arrange for any transfer of funds, property or services in separate agreements under applicable authority.

3. That this MOU will be subject to formal periodic reevaluation and possible amendment by the parties at intervals of no less than every five years from original date of enactment.

4. That all press releases and public statements issued by DOI or NARA concerning or characterizing this MOU will be jointly reviewed and agreed to by delegated staff representing each of the undersigned signatories.

Gale A. Norton
Secretary of the Interior

Date: Sept. 12, 2003

John W. Carlin
Archivist of the United States

Date: 9-12-03

# EXHIBIT 14:

# MEMORANDUM OF

# JAMES E. CASON,

# MAY 5, 2005

THE ASSOCIATE DEPUTY SECRETARY OF THE INTERIOR
WASHINGTON, D.C. 20240

Andy
Joe
Ardey
Tish
Lenor

MAY 5 2005

Memorandum

To: Director, Bureau of Indian Affairs
Director, Office of Indian Education Programs
Director, Office of Law Enforcement Services
Regional Directors, BIA
Central Office Directors, BIA
Agency Superintendents, BIA

From: James E. Cason James E Cason
Associate Deputy Secretary

Subject: ASIA Records Backlog Project

Attached please find a memorandum from the Assistant Deputy Secretary regarding the shipment of inactive records to the Office of Trust Records facility, the American Indian Records Repository (AIRR), in Lenexa, Kansas. This memorandum is to direct your compliance with the request from the Office of Trust Records (OTR). It is important that we adequately protect our records and moving them to the state-of-the-art records archive in Kansas is the best way to do that.

As the attached memorandum indicates, inactive records are those records that have met their retention date according to the approved 16 BIAM Records Schedule. I am concerned that there appears to be a considerable number of cubic feet (i.e., boxes) of inactive records at field locations and the number is continuing to grow, creating a backlog situation. I am very interested in seeing that as many inactive records as possible are moved to safe and secure storage at AIRR. However, if you have records which have met the retention date according to the Records Schedule but the records are still being used on a regular basis for conducting current business and the BIA/OIEP line officers do not want to send them to the AIRR, then they can be retained onsite, but the line officers must certify this in writing to the Director, OTR.

To expedite the retirement of these inactive records, OTR has modified the normal retirement of inactive record procedures for this records backlog project only. The procedures are attached. OTR will be contacting each field location to schedule a time when OTR can come to that location to assist in the preparation of the records for shipment to the Annex. **However, each field office should not wait for OTR to assist in the preparation of inactive records for shipment to the Annex/AIRR. Field offices should begin the preparation as soon as possible.**

Each BIA/OIEP regional and agency program should have a designated Records Contact who is familiar with and/or aware of their program's records and the attached procedures. OTR is requesting that the Records Contact or designee for each OST IIM program office be available during the scheduled project time. OTR's Regional Records Liaisons and other staff will be available to assist your offices in meeting our shared goal of retiring these records.

The attached procedures provide specific instructions and list the responsibilities for BIA, the Office of Indian Education Programs and OTR. BIA/OIEP program offices may contact their Regional Records Liaison or OTR Albuquerque for any questions relating to this project. OTR will coordinate all aspects of the records backlog project with BIA/OIEP regions and agency offices and will pay all shipping costs.

I appreciate your personal support and cooperation in retiring these inactive records from the field to AIRR in Lenexa, Kansas. Questions regarding this project can be directed to the Director, OTR, Ms. Ethel Abeita at (505) 816-1600.

Attachments

cc: Director, OTR ✓

# EXHIBIT 15:

# MEMORANDUM OF

# ETHEL J. ABEITA,

# MARCH 22, 2006

# United States Department of the Interior

OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Albuquerque, NM 87109

TAKE PRIDE IN AMERICA

Division of Records Management Policies, Procedures and Training

MAR 2 2 2006

Memorandum

To: Director, Bureau of Indian Affairs (BIA)
Director, Office of Indian Education Programs
Deputy Director, Office of Law Enforcement Services

Through: Chief Information Officer, Office of the Special Trustee for American Indians

From: Director, Office of Trust Records

Subject: ASIA Records Backlog Project

This memorandum is to request that you remind and direct BIA Line Officers to continue the preparation of all inactive records for shipment to the Office of Trust Records (OTR), Lenexa Annex. As you may recall, the Associate Deputy Secretary issued a directive in May 2005 directing compliance with this initiative. At that time, instructions were provided by OTR on how the inactive records should be prepared. We are finding that BIA offices are not preparing records prior to arrival of OTR's contractor and this is causing delays to the project.

As you may recall, BIA offices, with accumulations of 200 boxes or more of backlogged inactive records, have the option of preparing the records for shipment themselves or using OTR's contractor to prepare the inactive records for shipment. Remember, backlog inactive records are those records that have met the retention date under the approved Indian Affairs Records Schedules (16 BIAM Records Schedule and updates). It is very costly to store inactive records in office space and it is the objective of this project to centrally store and properly protect all inactive Indian records in archival quality space. Please be aware that copies of records can be requested at any time and copies will be provided by OTR staff at the American Indian Records Repository (AIRR).

Once the records arrive at Lenexa, they will be electronically indexed and accessioned into the AIRR for permanent storage. OTR provides each BIA office sending records with a completed Standard Form 135 and an index of the boxes of records retired. OTR's Regional Records Liaisons (RRL) will be contacting each BIA location with 200 or more boxes of inactive records to schedule an appointment to meet with program managers in order to provide guidance in the preparation of the records. The RRL will provide written instructions at this meeting and be available to answer questions.

4400 Masthead N.E.

BIA may contact their respective RRL or OTR Albuquerque staff for any questions related to this project. OTR will coordinate all aspects of the backlog inactive records project with BIA regions and agency offices and will pay all shipping costs.

Where records which have met the retention dates but are still being used on a regular basis for conducting current business and the BIA program manager cannot yet send the records to the AIRR, the program manager must prepare a "Records Retention Certification" providing information on the volume and where the records will be stored. The attached form should be used (see Attachment 1). Additionally, all file folders containing records that are retained must be re-labeled in accordance with the applicable updated records schedule. In other words, all file folders containing records that will be retained in the field must be labeled in compliance with the applicable updated records schedules. This includes all records that are listed in the certification to the OTR Director.

We appreciate your personal support in meeting the expectations of the Associate Deputy Secretary that all inactive records be expeditiously retired from the field to the AIRR in Lenexa, Kansas. Questions regarding this project may be directed to the Director, Ms. Ethel Abeita at 505-816-1600.

Attachments

cc: Assistant Secretary – Indian Affairs
Special Trustee, Office of the Special Trustee for American Indians
Acting, Deputy Assistant Secretary for Information Resources Management – Indian Affairs
Director, Office of Information Policy – Indian Affairs
Central Office Directors
Regional Directors

# ATTACHMENT 1

## INSTRUCTIONS FOR COMPLETING IARM FORM 4010-RECORDS RETENTION CERTIFICATION (Complete one form for each record series and Program)

The Certification Form must be prepared by each program retaining records at the agency or regional location and signed by the appropriate office head. (E.g., Agency Superintendent, Regional Director, or designee). This form is available on the BIA Intranet.

All file folders for inactive records (records that have met their retention date) being retained must be labeled in accordance with the updated and applicable records schedule and cannot be labeled using the 1989 16 BIAM Records Schedule.

**Section 1 – Responsible Official Information**

Items a-e, insert date, last name, first name and middle initial and title of the program manager retaining the records.

Item f, the program office (such as realty or forestry), must be identified. Include your region and agency if applicable.

Item g, include the office STREET address.

Item h and i, include a telephone and fax number of the program manager who is requesting these records be approved for retention.

**Section 2 – Records Information**

Item a, include the records series number.

Item b, include the volume of the records in cubic feet. (Cubic ft = 1 ½ letter vertical size filing cabinet drawer).

Item c, include the date range of the records from open to cut off dates.

Item d, check appropriate box for Trust or not.

Item e, state why these records need to be kept at the program office past their retention.

**Section 3 – Records Holding Facility Information**

Item a, identify the physical location where these records are stored. (Please provide the exact physical STREET address).

Item b, if records identified in Section 2d are Trust records, check **No** or **Yes** if they are stored in locking fireproof cabinets. If they were not identified as Trust records, check N/A for not applicable.

Item c, check all conditions that apply.

Item d, indicate by checking **No** or **Yes** if these records are stored near any of the conditions listed and indicate which conditions are applicable.

Item e, indicate by checking **No** or **Yes** if these records are at risk through continual use. Describe the current condition of the records.

Item f, indicate by checking **No** or **Yes** if there is sufficient room for storing these records in their current location.

Item g, program manager's signature and date certifying these records are still needed and used on a regular basis for conducting current business.

**Section 4 – Superintendent Concurrence**

Enter superintendent's name and date (if applicable) and obtain signature indicating he/she concurs with the program manager's certification.

**Section 5 – Region or Central Office Director Concurrence**

Enter regional or central office director name and date and obtain signature indicating he/she concurs with the Superintendent or the Program Manager's certification.

Attachment 1

**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
**Office of Trust Records**
**RECORDS RETENTION CERTIFICATION**

**1. RESPONSIBLE OFFICIAL INFORMATION**

| a. Date: | b. Last Name: | c. First Name: | d. MI: | e. Title: |
|---|---|---|---|---|

| f. Program Office: (Include regional office or agency name) | g. Office Street Address: |
|---|---|
| h. Office Telephone | i. Office Fax: |

**2. RECORDS INFORMATION**

| a. Record Schedule or Series Number? | b. Volume: (Cubic Feet) | c. Date Range: |
|---|---|---|

d. Are these Trust Records? ☐ No ☐ Yes

e. Justification: (Please state why it is necessary that records be kept at your location)

**3. RECORD HOLDING FACILITY INFORMATION**

a. Physical location (street address) where records are stored:

| b. If these records are trust records, are they stored in locking fire proof cabinets? ☐ Yes ☐ No ☐ N/A | c. Does the room have the following? (check all that apply) ☐ Sprinkler System ☐ Fire Alarm ☐ Smoke Detector ☐ Climate Control with Limited Humidity |
|---|---|

d. Are the records stored near overhead water pipes, electrical equipment, excessive heat, humidity or in locations where rodents have been known to exist?

☐ No

☐ Yes (If yes, please indicate which conditions are applicable)

e. Are any of these records at risk through continual use (worn appearance, faded print, brittleness, discoloration of paper torn, marked up, taped, falling apart, water damaged or in last use condition)

☐ No

☐ Yes (If yes, describe the records current condition)

f. Is there sufficient room for storing these records in their current location? ☐ Yes ☐ No

**g. I certify that these records have met the retention date established in the Indian Affairs Records Schedule, Indian Fiduciary Financial Record Schedule or the General Record Schedule (circle one) but are still needed and used on a regular basis for conducting current business.**

Program Manager Name — Program Manager Signature — Date:

**4. SUPERINTENDENT CONCURRENCE (If applicable)**

Superintendent Name — Superintendent Signature — Date:

**5. REGIONAL OR CENTRAL OFFICE DIRECTOR CONCURRENCE**

Regional or Central Office Director Name — Regional or Central Office Director Signature — Date:

IARM Form 4010, (September 2005)

alley copy

United States Department of the Interior
OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Albuquerque, NM 87109

TAKE PRIDE IN AMERICA

Division of Records Management Policies, Procedures and Training

FEB 01 2007

Memorandum

To: Director, Bureau of Indian Affairs (BIA)
Director, Bureau of Indian Education Programs
Deputy Director, Office of Law Enforcement Services

Through: Principal Deputy Special Trustee, Office of the Special Trustee for American Indians

From: Chief Information Officer, Office of the Special Trustee for American Indians

Subject: Assistant Secretary - Indian Affairs Records Backlog Project

This memorandum is to request that you remind and direct BIA Line Officers to continue the preparation of all inactive records for shipment to the Office of Trust Records (OTR) at the Annex in Lenexa, Kansas. As you may recall, the Associate Deputy Secretary issued a directive in May 2005 directing compliance with this initiative. At that time, instructions were provided by OTR on how the inactive records should be prepared. We are finding that BIA offices are not preparing records prior to arrival of OTR's contractor and this is causing delays to the project.

BIA offices have the option of preparing inactive records for shipment themselves or using OTR's contractor. Remember, backlog inactive records are those records that have met the retention date under the approved Indian Affairs Records Schedules (16 BIAM Records Schedule and updates). It is very costly to store inactive records in office space and it is the objective of this project to centrally store and properly protect all inactive Indian records in archival quality space. Please be aware that copies of records can be requested at any time and copies will be provided by OTR staff at the American Indian Records Repository (AIRR).

Once the records arrive at Lenexa, they will be electronically indexed and accessioned into the AIRR for permanent storage. OTR provides each BIA office with a completed Standard Form 135 and an index of the boxes of records retired. OTR's Regional Records Liaisons (RRLs) will be contacting each BIA location with inactive records to schedule an appointment to meet with program managers in order to provide guidance in the preparation of the records. The RRL will provide written instructions at this meeting and will be available to answer questions.

BIA may contact their respective RRL or OTR Albuquerque staff for any questions related to this project. OTR will coordinate all aspects of the backlog inactive records project with BIA regions and agency offices and will pay all shipping costs.

4400 Masthead N.E.

Where records which have met the retention dates are still being used on a regular basis for conducting current business and the BIA program manager cannot yet send the records to the AIRR, the program manager must prepare a "Records Retention Certification" providing information on the volume and where the records will be stored. The attached form should be used (see Attachment 1). Additionally, all file folders containing records that are retained must be re-labeled in accordance with the applicable updated records schedule. In other words, all file folders containing records that will be retained in the field must be labeled in compliance with the applicable updated records schedules. This includes all records that are listed in the certification to the OTR Director.

We appreciate your personal support in meeting the expectations of the Associate Deputy Secretary that all inactive records be expeditiously retired from the field to the AIRR in Lenexa, Kansas. Questions regarding this project may be directed to the Director, Ms. Ethel Abeita at 505-816-1600.

Attachments

cc: Assistant Secretary – Indian Affairs
Special Trustee, Office of the Special Trustee for American Indians
Acting Chief Information Officer – Indian Affairs
Director, Office of Information Policy – Indian Affairs
Central Office Directors
Regional Directors

# EXHIBIT 16:

# MEMORANDUM OF CHIEF INFORMATION OFFICER, OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS, FEBRUARY 1, 2007

alley copy

# United States Department of the Interior

OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Albuquerque, NM 87109

TAKE PRIDE IN AMERICA

Division of Records Management Policies, Procedures and Training

FEB 01 2007

Memorandum

To: Director, Bureau of Indian Affairs (BIA)
Director, Bureau of Indian Education Programs
Deputy Director, Office of Law Enforcement Services

Through: Principal Deputy Special Trustee, Office of the Special Trustee for American Indians

From: Chief Information Officer, Office of the Special Trustee for American Indians

Subject: Assistant Secretary - Indian Affairs Records Backlog Project

This memorandum is to request that you remind and direct BIA Line Officers to continue the preparation of all inactive records for shipment to the Office of Trust Records (OTR) at the Annex in Lenexa, Kansas. As you may recall, the Associate Deputy Secretary issued a directive in May 2005 directing compliance with this initiative. At that time, instructions were provided by OTR on how the inactive records should be prepared. We are finding that BIA offices are not preparing records prior to arrival of OTR's contractor and this is causing delays to the project.

BIA offices have the option of preparing inactive records for shipment themselves or using OTR's contractor. Remember, backlog inactive records are those records that have met the retention date under the approved Indian Affairs Records Schedules (16 BIAM Records Schedule and updates). It is very costly to store inactive records in office space and it is the objective of this project to centrally store and properly protect all inactive Indian records in archival quality space. Please be aware that copies of records can be requested at any time and copies will be provided by OTR staff at the American Indian Records Repository (AIRR).

Once the records arrive at Lenexa, they will be electronically indexed and accessioned into the AIRR for permanent storage. OTR provides each BIA office with a completed Standard Form 135 and an index of the boxes of records retired. OTR's Regional Records Liaisons (RRLs) will be contacting each BIA location with inactive records to schedule an appointment to meet with program managers in order to provide guidance in the preparation of the records. The RRL will provide written instructions at this meeting and will be available to answer questions.

BIA may contact their respective RRL or OTR Albuquerque staff for any questions related to this project. OTR will coordinate all aspects of the backlog inactive records project with BIA regions and agency offices and will pay all shipping costs.

4400 Masthead N.E.

Where records which have met the retention dates are still being used on a regular basis for conducting current business and the BIA program manager cannot yet send the records to the AIRR, the program manager must prepare a "Records Retention Certification" providing information on the volume and where the records will be stored. The attached form should be used (see Attachment 1). Additionally, all file folders containing records that are retained must be re-labeled in accordance with the applicable updated records schedule. In other words, all file folders containing records that will be retained in the field must be labeled in compliance with the applicable updated records schedules. This includes all records that are listed in the certification to the OTR Director.

We appreciate your personal support in meeting the expectations of the Associate Deputy Secretary that all inactive records be expeditiously retired from the field to the AIRR in Lenexa, Kansas. Questions regarding this project may be directed to the Director, Ms. Ethel Abeita at 505-816-1600.

Attachments

cc: Assistant Secretary – Indian Affairs
Special Trustee, Office of the Special Trustee for American Indians
Acting Chief Information Officer – Indian Affairs
Director, Office of Information Policy – Indian Affairs
Central Office Directors
Regional Directors

# EXHIBIT 17:

# 29TH INTERIOR REPORT,

# MAY 1, 2007

# Status Report to the Court
# Number Twenty-Nine

**For the Period**
**January 1, 2007 through March 31, 2007**

**May 1, 2007**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1
I. OFFICE OF HISTORICAL TRUST ACCOUNTING ..... 3
II. OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS ..... 9
A. TRUST SERVICES – CURRENT ACCOUNTING ..... 11
B. OFFICE OF TRUST RECORDS ..... 15
C. TRUST ACCOUNTABILITY ..... 19
1. TRUST BUSINESS PROCESS MODELING ..... 19
2. TRUST DATA QUALITY AND INTEGRITY ..... 21
3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM ..... 23
4. RISK MANAGEMENT ..... 25
5. TRUST REGULATIONS, POLICIES AND PROCEDURES ..... 27
D. TRUST REVIEW AND AUDIT ..... 29
E. OFFICE OF APPRAISAL SERVICES ..... 31
III. INDIAN AFFAIRS ..... 35
A. TRUST REGULATIONS, POLICIES AND PROCEDURES ..... 35
IV. BUREAU OF INDIAN AFFAIRS ..... 37
A. FRACTIONATION ..... 37
B. PROBATE ..... 39
V. OTHER TOPICS ..... 41
A. INFORMATION TECHNOLOGY ..... 41
B. CADASTRAL SURVEY ..... 47
C. MINERALS MANAGEMENT SERVICE ..... 51
ACRONYMS AND ABBREVIATIONS ..... 53

## 3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM

**Introduction**

Interior has a continuing responsibility to provide adequate staffing, supervision and training for trust fund management and accounting activities. Fiduciary trust training is essential to the success of Interior's trust reform efforts and forms an integral part of all training for Interior employees who are involved in the management of Indian trust assets.

**Current Status**

During this reporting period, Cannon Financial Institute personnel presented:

- One *Indian Fiduciary Trust Principles* course to 22 OST, BIA and tribal personnel. Completion of this course, passing an exam and reviewing a DVD entitled *Fiduciary Concepts* are requirements of the *Certified Indian Fiduciary Trust Analyst* certification.

- Five specialty courses to 70 OST and BIA personnel. The specialty courses, *Risk Management, Probate, Trust Accounting, Asset Management*, and *Fiduciary Behavior and Guardianships* are part of the *Certified Indian Fiduciary Trust Specialist* certification program.

During this reporting period, OST training staff conducted 10 training sessions for 114 OST, BIA, and contractor staff on the use of TFAS and related systems and reporting programs that include:

- CSS – used to enter, approve and post cash transactions;

- Stratavision – contains daily, weekly and monthly reports from OST systems for viewing by OST and BIA staff;

- Historical Query Database – contains account transaction history going back to 1985; and

- TFR – Trust Funds Receivable – used for tracking lockbox receipts.

OST and BIA staff presented one *Trust Fundamentals* course to 16 OST and DOI University staff. This course includes such topics as the history and policy of Indian trust, current trust reform activities, job roles and responsibilities, and organization and working relationships.

**Delays and Obstacles**

The lack of Internet access inhibits electronic communication with other governmental agencies and contractors, hinders the research of training tools and potential contractors, and restricts OST's ability to access online training programs.

**Assurance Statement**

I concur with the content of the information contained in the Indian Fiduciary Trust Training Program section of the *Status Report to the Court Number Twenty-Nine.* The information provided in this section is accurate to the best of my knowledge.

Date: April 23, 2007

Name: *Signature on File*
Dianne M. Moran
Director, Office of Trust Training
Office of the Special Trustee for American Indians

## B. OFFICE OF TRUST RECORDS

**Introduction**

The Office of Trust Records was established in 1999 to develop and implement a program for the economical and efficient management of trust records, consistent with the 1994 Act, the Federal Records Act and other statutes and implementing regulations. The OTR records management program has been developed and implemented, and continues to evolve, to ensure that necessary Indian records are maintained, records retention schedules are consistent with retention needs, and records are safeguarded throughout their life-cycles.

**Accomplishments**

**American Indian Records Repository**

The American Indian Records Repository was built by Interior in collaboration with NARA for the purpose of consolidating and preserving Indian records at one NARA regional records center. The facility, located in Lenexa, Kansas, opened in May 2004. Prior to the opening of AIRR, Indian records were stored in various NARA regional records centers, BIA, and other government facilities across the United States. All Indian records from the NARA regional centers have been shipped to AIRR, while records continue to be collected from the other locations for shipment to AIRR. Indian records are indexed at the AIRR Annex before being transferred to AIRR for storage. A file level index of the contents of each box is stored in an electronic data base called the Box Index Search System.

Approximately 5,223 boxes of inactive records were moved from BIA/OST field locations to the Lenexa Annex for indexing during this reporting period. Indexing of approximately 154,420 boxes has been completed as of the end of this reporting period. Approximately 151,600 indexed boxes have been sent to AIRR for permanent storage.

**Training**

OTR provided records management training for 198 BIA and OST records contacts and 52 tribal employees during this reporting period. OTR provided records management training to Tribes as they requested training.

**Current Status**

**Safeguarding Records**

As previously reported, in November 2006, OTR's conservation contractor conducted an in depth review of box contents and drafted a remediation plan. OTR had determined that two boxes contained trust records and would undergo repair/conservation. The other boxes did not contain trust records and were to be stored at the AIRR without remediation. However, it was subsequently decided by OTR that the contents of all six boxes would undergo

repair/conservation, which was completed in this reporting period. The conservator separated pages, flattened, cleaned and repaired documents as necessary. Parallel files were set up as necessary (parallel files are composed of copies of the original documents that will be used for research, if necessary, in order to safeguard the original documents).

Also, as previously reported, NARA recommended copying of maps from eight oversized boxes for preservation purposes. Several of the large maps were too big for NARA's copiers. Remediation of these maps by the contractor was also completed during this reporting period. The large maps were cleaned, repaired and, when possible, flattened. OTR reviewed the maps after they were treated and determined that the maps will be copied, on a case by case basis, when requested by researchers.

**Records Retention Schedules**

The Archivist of the United States approved the BIA Geographic Information System (GIS) electronic record schedule on March 30, 2007.

As previously reported, records retention schedules for thirteen BIA electronic records systems were forwarded to NARA in November and December 2006. NARA is reviewing the records schedules and has requested additional information on six systems.

Records retention schedules for three OST electronic records systems were developed and forwarded to NARA during the last week of December 2006. NARA is reviewing the OST electronic systems records schedules and has requested additional information on two systems.

Paper records retention schedules for all OST offices were sent to NARA for review and approval during this reporting period. NARA has informed OTR that it is anticipated that schedules will be forwarded to the Archivist of the United States in the next reporting period.

**Delays and Obstacles**

Lack of Internet access continues to hinder OTR's ability to provide remote access to the record index database for authorized users of the records. If Internet access were available, authorized researchers could conduct their searches from their respective work sites and only visit AIRR when necessary to inspect specific boxes or request documents from specific boxes.

*STATUS REPORT TO THE COURT NUMBER TWENTY-NINE*



**Assurance Statement**

I concur with the content of the information contained in the Office of Trust Records section of the *Status Report to the Court Number Twenty-Nine.* The information provided in this section is accurate to the best of my knowledge.

Date: April 18, 2007

Name: *Signature on File*
Ethel J. Abeita
Director, Office of Trust Records
Office of the Special Trustee for American Indians

## 3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM

**Introduction**

Interior has a continuing responsibility to provide adequate staffing, supervision and training for trust fund management and accounting activities. Fiduciary trust training is essential to the success of Interior's trust reform efforts and forms an integral part of all training for Interior employees who are involved in the management of Indian trust assets.

**Current Status**

During this reporting period, Cannon Financial Institute personnel presented:

- One *Indian Fiduciary Trust Principles* course to 22 OST, BIA and tribal personnel. Completion of this course, passing an exam and reviewing a DVD entitled *Fiduciary Concepts* are requirements of the *Certified Indian Fiduciary Trust Analyst* certification.
- Five specialty courses to 70 OST and BIA personnel. The specialty courses, *Risk Management, Probate, Trust Accounting, Asset Management*, and *Fiduciary Behavior and Guardianships* are part of the *Certified Indian Fiduciary Trust Specialist* certification program.

During this reporting period, OST training staff conducted 10 training sessions for 114 OST, BIA, and contractor staff on the use of TFAS and related systems and reporting programs that include:

- CSS -- used to enter, approve and post cash transactions;
- Stratavision – contains daily, weekly and monthly reports from OST systems for viewing by OST and BIA staff;
- Historical Query Database -- contains account transaction history going back to 1985; and
- TFR – Trust Funds Receivable – used for tracking lockbox receipts.

OST and BIA staff presented one *Trust Fundamentals* course to 16 OST and DOI University staff. This course includes such topics as the history and policy of Indian trust, current trust reform activities, job roles and responsibilities, and organization and working relationships.

**Delays and Obstacles**

The lack of Internet access inhibits electronic communication with other governmental agencies and contractors, hinders the research of training tools and potential contractors, and restricts OST's ability to access online training programs.

**Assurance Statement**

I concur with the content of the information contained in the Indian Fiduciary Trust Training Program section of the *Status Report to the Court Number Twenty-Nine.* The information provided in this section is accurate to the best of my knowledge.

Date: April 23, 2007

Name: *Signature on File*
Dianne M. Moran
Director, Office of Trust Training
Office of the Special Trustee for American Indians

## V. OTHER TOPICS

### A. INFORMATION TECHNOLOGY

**Introduction**

This section describes the status of Interior IT systems, particularly the systems that house or provide access to IITD or provide various computing capabilities, including functions critical to the proper administration of the individual Indian trust responsibilities within Interior. In addition, this section describes various efforts being made to improve IITD security within Interior, pursuant to OMB Circular A-130 Appendix III, and challenges due to no Internet connectivity at four bureaus.

**Accomplishments**

**Computer Security:**
Interior continues to make progress in enhancing IT security through improvements to the vulnerability scanning process and the re-Certification & Accreditation of systems. The most noteworthy accomplishments, completions and challenges during the reporting period are described below.

***Prevention and Monitoring***

- ESN is working with BIA to improve the strength of firewall configurations and the functionality of the BIA Intrusion Detection System for TrustNet.
- ESN has implemented a new product for ongoing assessment of external vulnerabilities which is part of Interior's proactive monitoring program.
- During the reporting period ESN perimeter security controls successfully blocked more than one million network attacks.

***Policies and Guidance***

- On January 16, 2007, the acting Interior CIO issued "Security Threats Posed by Trusted Insiders" to bureau and office CIOs. This memo summarized the IT security risks posed by trusted insiders and reiterated the risk mitigation activities that bureaus and offices should undertake to address these threats.
- On February 26, 2007, the acting Interior CIO issued "Fiscal Year (FY2007) Annual End-User Federal Information Systems Security Awareness Training" to assistant secretaries and heads of bureaus and offices. This memo requires all users of Interior IT systems to complete annual security awareness training no later than July 31, 2007.
- On March 22, 2007, the Deputy Secretary issued "Cyber Security Responsibilities" to all Interior employees and contractors. This memo reminded all employees and contractors of their obligation to be knowledgeable about their roles and responsibilities in terms of cyber security.

**Plan of Action and Milestones:**

- As reported to OMB, Interior has continued to remediate and close out a significant number of weaknesses, eliminating 418 during this reporting period. However, 542 new weaknesses were identified and added; many resulted from self-assessments, independent financial audits and findings based on OIG reports. This reflects Interior's proactive efforts to identify, track and correct security weaknesses. Interior continues to address the remaining 2,014 open weaknesses.
- All weaknesses are categorized as having a risk impact level of high, medium or low. These ratings are used to prioritize efforts to correct weaknesses. Of the 2,014 open weaknesses, 474 (23.5%) are rated high, 997 (49.5%) are rated medium and 543 (27%) are rated low.
- The POA&M statistics include NPS and USGS, which are not trust bureaus. POA&M statistics for trust bureaus are: 155 (14.6%) high, 474 (44.6%) medium, 433 (40.8%) low, for a total of 1,062.
- During the reporting period, Interior submitted to OMB corrected POA&M data for the first quarter of FY2007 as follows: 256 weaknesses closed, 444 new weaknesses identified and a total of 1890 open weaknesses.

**IT Systems Architecture:**

- Interior completed the final draft of the Management Planning and National Environmental Policy Act (NEPA) architectural blueprint. The architectural blueprint recommends business, data, service and technology improvements for Interior land use planning in compliance with NEPA. NEPA affects the management of both federal and Indian trust lands.

**Staffing:**

- The following positions were filled during the reporting period:
  - NBC Deputy CIO
  - BIA C&A Project Manager.

**Current Status**

**A-130 Certification and Accreditation:**

All trust systems that are currently tracked in DEAR now have full ATO status.

- The FWS Isolated Realty Network received full ATO status on March 9, 2007.
- New BIA trust systems:
  - The Trust Active Directory, described in the previous report to the court, received full ATO status on February 15, 2007.
  - All BIA LANs have been associated with one of four geographic zones. Each of these zones will be a separate C&A boundary. C&A activities for each of these four zones, is currently underway and is expected to be completed in the next reporting period.

**ZANTAZ:**

- The contract was awarded in December 2006 for the forensic analysis of the 268 blank BIA tapes documented in the *Status Report to the Court Number Twenty-Five*. Due to personnel changes, performance under this contract is now scheduled to begin in April 2007.
- As reported in the previous status report to the court, ZANTAZ received the 25 BLM tapes. During this reporting period, ZANTAZ processed the tapes for delivery of messages to the digital safe. Preparation of processed tapes for return to BLM is being performed according to Interior's tape handling policy.
- In February 2007, BLM's Alaska State Office experienced a problem transmitting to ZANTAZ for approximately 11 hours. During this period of time, email was not sent to ZANTAZ. The backup tapes that contain the emails that were not sent during that period are expected to be delivered to ZANTAZ for processing in the next reporting period.
- As reported in the prior three reports, NBC and BLM are both experiencing incompatibilities between anti-virus software and ZANTAZ software. BLM has been working with ZANTAZ to resolve the problem. BLM continues to test a new version of ZANTAZ.
- On March 27, 2007, ZANTAZ notified Interior that a file containing pass codes used to control access to ZANTAZ technical support services was inadvertently sent to another ZANTAZ customer. ZANTAZ customer service notified the individual receiving the file within five minutes of the error. Following investigation, ZANTAZ found no indication that the security of Interior data was compromised. ZANTAZ informed Interior that the file was immediately quarantined. ZANTAZ has changed all pass codes issued to customers to mitigate risks associated with the error.

**Training and Awareness:**

- NBC has begun 2007 Role-Based Security Training as required by FISMA, and is at 35% completion for the individuals required to receive this training.
- Twelve BIA employees & contractors attended a five day training session on "Security Manager Module," a commercial software product that enhances BIA's ability to monitor and respond to network events.
- An MMS contractor presented a three-day Certification and Accreditation course to a number of MMS IT security personnel. This course encompassed all aspects of C&A and leads to certification as a C&A professional.

**Incidents:**

- On December 28, 2006, four tribal computers, four tribal flash drives and an unknown number of tribal CDs were stolen from a 638 tribal office operated on behalf of OST and located on Yakama Nation property. This incident was reported to local police and remains under investigation. An OCIO task force evaluated the types and sensitivity of the data involved. It was determined that the data files that were stolen contained copies of information regarding real property, lessees and lessors, such as:
  - names and addresses of each lessee and lessor;

- lease number, term and date;
- type, character and legal description of the property that is the subject of the lease appraisal;
- number of acres leased, rental price per acre and total value of the lease.

The analysis also determined that because the information is generally publicly available, the risk of identity theft from the compromise of this information was low. Interior expects to send a notification letter to each of the approximately 200 affected individuals. This letter summarizes the incident, the results of the analysis and recommends that individuals follow best practices for preventing identity theft by continually monitoring their credit reports.

- OHA reported potential misuse of a laptop computer in December 2006. The investigation of this incident by OIG is ongoing.
- During a routine internal review of NBC Appraisal Services Directorate records, an appraisal record containing general Indian trust data was found included in work product on an NBC network connected personal computer. However, the record did not contain IITD. The record was moved from the personal computer to a storage device. NBC Security performed a forensics analysis on the personal computer to ensure that there was no malicious code or other evidence of compromise that would have posed a threat to the information and found no such evidence.
- On January 18, 2007, visual evidence indicated that an attempt had been made to physically break into the BLM computer room containing the servers for the LR2000 system. The cylinder lock on the door had been scratched and rotated from its normal vertical key-insertion position. No other doors appeared to have been forced. There was no evidence that the intruder gained access. Although the lock was not compromised, BLM coordinated with GSA (the building owner) to install an additional metal plate over the lock mechanism to prevent similar break-in attempts in the future.
- In January 2007, a BIA contractor who was conducting probate remediation efforts for the Eastern Region shipped four BIA computers to the contractor's facility in Albuquerque. The contractor did not follow the required "wipe and backup" procedures before shipping the computers. It is not known if the computers were encrypted or contained any sensitive information or data (e.g., privacy or trust). BIA's Office of IT Security and Privacy is in the process of assessing both Interior and bureau specific policies related to the transfer of equipment.
- In February 2007, a BIA Contracting Officers' Representative identified and reported to BIA OISP that incumbent contractor personnel who were retained on a newly awarded contract did not have proper background checks as required under federal guidelines. All contractor personnel who did not have a valid background investigation were immediately removed from proximity to the IT systems. Background investigations have been initiated for these individuals and are currently pending results from OPM. These individuals will not be authorized to access systems until favorable background investigations have been received.

**Reports:**
These reports were among those issued during this reporting period.

- Using input provided by agency OIGs, Congressman Davis issued the Seventh Report Card on Computer Security at Federal Departments and Agencies on April 12, 2007. Interior was one of eight agencies receiving a failing grade. Overall, the government received a grade of "C-."
- On March 13, 2007, the OIG issued a Notice of Findings and Recommendations. This NFR indicated that during the course of an information technology security evaluation conducted March 6 – 9, 2007, the OIG was able to readily obtain unauthorized access to very sensitive information. Interior has taken the following steps to respond to this NFR and the recommendations that it contains:
  - Informed all bureau and office CIOs of the findings and recommendations and directed that immediate corrective action be taken.
  - Established an Internal Security Improvement Team to develop:
    - additional near-term and longer-term actions needed to address specific issues related to the NFR and results of reviews and assessments of any remaining risks;
    - an enhanced and comprehensive defense-in-depth strategy to enhance Interior's IT security posture.
  - Defined corrective and/or mitigating actions to be taken by all Interior bureaus and offices by April 27, 2007. The results of these actions will be reported in the next quarterly report.
  - As a result of this incident, the IG is conducting an investigation.

## Delays and Obstacles

Like other federal agencies, Interior must address many challenges regarding the integration, performance, funding, security, and data integrity of IT systems. Interior initiated or completed steps to address some of the challenges reported in this and previous reporting periods. However, delays and obstacles listed below impede progress in achieving Interior's IT management goals.

**Staffing**

- Interior is experiencing high staff and management turnover in critical IT positions, particularly IT security.
- As announced during the previous reporting period, the Interior CIO retired from federal service on January 3, 2007. The Interior Deputy Secretary named the CIO for the USGS to replace the FWS CIO as the acting Interior CIO effective March 12, 2007.
- The following positions remained vacant at the end of this reporting period:
  - Interior's Deputy CISO, Security Policy Lead and Trust Security Officer
  - NBC's IT Security Manager,
  - ESN's Enterprise Security Officer,
  - MMS's MRM IT Security Manager,
  - BLM's IT Security Manager, and
  - BIA's CIO.

**Funding and Resources**

- Limited congressional appropriations have impacted the ability of Interior to fill personnel vacancies, complete projects and meet deadlines.
- Court orders requiring bureaus to maintain email backup tapes for indefinite periods require the acquisition and maintenance of an extremely large volume of expensive backup tape media. This cost burden on Interior bureaus and offices has diverted funding from other Interior programs.

**Denied Internet Access**

Four Interior bureaus and offices (BIA, OHA, OST and SOL) have not been permitted by the Court to have Internet access since December 5, 2001. As previously reported and detailed in the *Status Report to the Court Number Twenty-Eight*, lack of Internet access impedes work processes and the ability to communicate effectively, both internally and externally.

The following is one of many examples of how bureaus and offices are impacted by lack of Internet access:

- SOL is representing BLM before the administrative tribunal that hears matters pertaining to Arizona Department of Water Resources. The ALJ hearing this case is requiring electronic filings of all protests and written materials relevant to the case. However, due to lack of Internet access, SOL's difficulty in complying with this requirement has reduced its efficiency by requiring SOL attorneys to travel to BLM's office to file and obtain access to court documents.

**Assurance Statement**

I concur with the content of the information contained in the Information Technology section of the *Status Report to the Court Number Twenty-Nine.* The information provided in this section is accurate to the best of my knowledge.

Date: April 30, 2007

Name: *Signature on File*
Karen Siderelis
Department of the Interior Chief Information Officer (Acting)

## ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| 1994 Act (or Act) | American Indian Trust Fund Management Reform Act of 1994 |
| A-123 | Office of Management and Budget Circular A-123, Management's Responsibility for Internal Control |
| A-130 | Office of Management and Budget Circular A-130 Appendix III |
| ADM | Attorney Decision Makers |
| AFMSS | Automated Fluid Mineral Support System |
| AIMS | ActivCard Identity Management System |
| AIPRA | American Indian Probate Reform Act |
| AIRR | American Indian Records Repository |
| ALIS | Alaska Land Information System |
| ALJ | Administrative Law Judges |
| ARO | Alaska Region office |
| ARRTS | Appraisal Request and Review Tracking System |
| ART | Accounting Reconciliation Tool |
| AS-IA | Assistant Secretary-Indian Affairs |
| ASD | Appraisal Services Directorate |
| ASM | Accounting Standards Manual |
| ATO | authority to operate |
| BIA | Bureau of Indian Affairs |
| BIAM | Bureau of Indian Affairs Manual |
| BILS | BLM Indian Lands Surveyors |
| BISS | Box Index Search System |
| BITSM | Bureau Information Technology Security Manager |
| BLM | Bureau of Land Management |
| BOR | Bureau of Reclamation |
| BPA | Blanket Purchase Agreement |
| BRM | Business Reference Model |
| C&A | Certification and Accreditation |
| CARS | Cadastral Automated Request System |
| CDE | Critical Data Elements |
| CFedS | Certified Federal Surveyor |
| CFI | Continuous Forest Inventory |
| CGI | Software vendor successor to TAAMS vendor |
| CGIS | Cadastral Geographic Information Systems |
| CI Manual | Coding and Imaging Manual |
| CIFTA | Certified Indian Fiduciary Trust Analyst |
| CIFTS | Certified Indian Fiduciary Trust Specialist |
| CIO | Chief Information Officer |
| CIRC | Computer Incidents Response Center |
| CISO | Chief Information Security Officer |
| CISSP | Certified Information System Security Professional |
| CMS | Credential Management System |
| COTS | Commercial off-the-shelf |

| | |
|---|---|
| CP&R | Check Payment and Reconciliation |
| CPIC | Capital Planning and Investment Control |
| CSIRC | Computer Security Incident Response Capability |
| CSIRT | Computer Security Incident Response Team |
| CSS | Customer StrataStation |
| CTM | Comprehensive Trust Management Plan |
| DAA | Designated Approving Authority |
| DEAR | DOI Enterprise Architecture Repository |
| DDoS | Distributed Denial of Service |
| DLRM | DOI Land and Resource Management |
| DM | Departmental Manual |
| DMZ | De-Militarized Zone |
| DNS | Domain Name Server |
| DOI | Department of the Interior |
| DOP | Desk Operating Procedure |
| DoS | Denial of Service |
| DQ&I | Data Quality and Integrity |
| DRM | Data Reference Model |
| EA | Enterprise Architecture |
| ENA | Eastern Navajo Agency |
| EORO | Eastern Oklahoma Region office |
| ERA | Electronic Records Era |
| ERO | Eastern Region office |
| ESN | Enterprise Services Network |
| ETP | Enterprise Transition Plan |
| FAMS | Facilities Asset Management System |
| FAR | Federal Acquisition Regulation |
| FBMS | Financial Business Management System |
| FFMIA | Federal Financial Management Improvement Act |
| FIMO | Farmington Indian Minerals Office |
| FIPS | Federal Information Processing Standards |
| FISMA | Federal Information Security Management Act |
| FMFIA | Federal Managers' Financial Integrity Act |
| FOIA | Freedom of Information Act |
| FRC | Federal Records Center |
| FRD | Functional Requirements Document |
| FTM | Fiduciary Trust Model |
| FTO | Fiduciary Trust Officer |
| FWS | U.S. Fish and Wildlife Service |
| GAO | Government Accountability Office |
| GCDB | Geographic Coordinate Data Base |
| GIS | Geographic Information System |
| GLO | General Land Office |
| GLADS | Great Lakes Agency Database System |
| GPRO | Great Plains Region office |

| | |
|---|---|
| GPS | Global Positioning System |
| GSA | General Services Administration |
| GSS | General Support Systems |
| HSPD-12 | Homeland Security Presidential Directive 12 |
| IAM | Indian Affairs Manual |
| IATO | Interim Approval to Operate |
| ICR | Internal Control Review |
| ICRs | Information Collection Requests |
| IEA | Interior Enterprise Architecture |
| IFTR | Indian Fiduciary Trust Records |
| IG | Inspector General |
| IIM | Individual Indian Money |
| IITD | Individual Indian Trust Data |
| ILCA | Indian Land Consolidation Act |
| ILCO | Indian Land Consolidation Office |
| ILCP | Indian Land Consolidation Project |
| IM | Instruction Memorandum |
| InfoDat | Indian Forestry Database |
| Interior | Department of the Interior |
| IP | Internet Protocol |
| IPJ | Indian Probate Judges |
| IPv6 | Internet Protocol Version 6 |
| IQCS | Incidence Qualification and Certification System |
| IRM | Information Resources Management |
| IRMS | Integrated Records Management System |
| IRN | Isolated Realty Network |
| IRS | Internal Revenue Service |
| ISSDA | Indian Service Special Disbursing Agents |
| ISA | Information Security Assessment |
| ISIT | Internal Security Improvements Team |
| IT | Information Technology |
| ITARS | Indian Trust Appraisal Request Tracking System |
| ITIMS | Integrated Transportation Information Management System |
| ITRS | Indian Trust Rating System |
| IV&V | independent verification and validation |
| LAN | Local area network |
| LCTS | Land Consolidation Tracking System |
| LMS | Learning Management System |
| LR2000 | Legacy Rehost 2000 System |
| LRIS | Land Records Information System |
| LTIC | Land Tenure in Indian Country |
| LTRO | Land Titles and Records Office |
| MA | Major Application |
| MAD/LCP | Management Accounting Distribution/Land Consolidation Program |
| MADS | Management Accounting Distribution System |

| | |
|---|---|
| MMD | Missing Mandatory Documents for Unrestricted Accounts |
| MMS | Minerals Management Service |
| MOU | Memorandum or Memoranda of Understanding |
| MRM | Minerals Revenue Management |
| MRMSS | Minerals Revenue Management Support System |
| MWRO | Midwest Region office |
| NARA | National Archives and Records Administration |
| NBC | National Business Center |
| NFR | Notice of Findings and Recommendations |
| NILS | National Integrated Lands System |
| NIPTC | National Indian Programs Training Center |
| NIST | National Institute of Standards and Technology |
| NORC | National Opinion Research Center |
| NPS | National Park Service |
| NRO | Navajo Region office |
| NWRO | Northwest Region office |
| O&G | Oil and Gas |
| OAS | Office of Appraisal Services |
| OCIO | Office of the Chief Information Officer |
| OHA | Office of Hearings and Appeals |
| OHTA | Office of Historical Trust Accounting |
| OIG | Office of the Inspector General |
| OISP | Office of IT Security and Privacy |
| OME | Office of Minerals Evaluation |
| OMB | Office of Management and Budget |
| OSM | Office of Surface Mining |
| OST | Office of the Special Trustee for American Indians |
| OTFM | Office of Trust Funds Management |
| OTP | Office of Trust Regulations, Policies and Procedures |
| OTR | Office of Trust Records |
| OTRA | Office of Trust Review and Audit |
| PAR | Performance and Accountability Report |
| PII | Personally Identifiable Information |
| PIV | Personal Identity Verification |
| PLSS | Public Land Survey System |
| PMB | Policy, Management and Budget |
| PMSO | Project Management Support Office |
| POA&M | Plans of Actions and Milestones |
| Post-QA | Post Quality Assurance |
| PPA | Office of Planning and Policy Analysis |
| PRIS | Production and Response Information System |
| PRO | Pacific Region office |
| ProTrac | Probate Case Management and Tracking System |
| QA | Quality Assurance |
| QC | Quality Control |

| | |
|---|---|
| RAF | Recommended Action Forms |
| RAS | Rangeland Administration System |
| RDRS | Royalty Distribution and Reporting System |
| REM | Real Estate Module |
| RFP | Request for Proposal |
| RM-PLUS | Risk Management Assessment/Evaluation tool |
| RMRO | Rocky Mountain Region office |
| ROW | Rights-of-Way |
| SANS | SysAdmin, Audit, Network, Security |
| SCADA | Supervisory Control and Data Acquisition |
| SDA | Special Deposit Accounts |
| SDLC | System Development Life Cycle |
| SMEs | Subject Matter Experts |
| SMS | System Management Servers |
| SOL | Office of the Solicitor |
| SPRO | Southern Plains Region office |
| SSA | Social Security Administration |
| SSM | System Security Manager |
| SSP | System Security Plan |
| ST&E | Security Test and Evaluation |
| Statements | Historical Statements of Account |
| STIGs | Security Technical Implementation Guides |
| SUS | System Update Servers |
| SWRO | Southwest Region office |
| TAAMS | Trust Asset and Accounting Management System |
| TAP | Technical Architecture Profile |
| TBCC | Trust Beneficiary Call Center |
| TESC | Trust Executive Steering Committee |
| TFAS | Trust Fund Accounting System |
| TPMC | Trust Program Management Center |
| TRAC | Trust Tracking and Coordination |
| Treasury | Department of the Treasury |
| TRM | Technical Reference Model |
| TRO | Temporary Restraining Order |
| UAT | User Acceptance Testing |
| USGS | United States Geological Survey |
| USPAP | Uniform Standards of Professional Appraisal Practice |
| VBNS | Very High Performance Backbone Network Service |
| VPN | Virtual Private Network |
| WAN | Wide area network |
| WAU | Whereabouts Unknown |
| WRO | Western Region office |

*THIS PAGE INTENTIONALLY BLANK*

# EXHIBIT 18:

# 23RD INTERIOR REPORT,

# NOVEMBER 1, 2005

# Status Report to the Court
# Number Twenty-Three

**For the Period**
**July 1, 2005 through September 30, 2005**

**November 1, 2005**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. SECRETARY GALE NORTON'S OBSERVATIONS ........ 2
A. INFORMATION TECHNOLOGY ........ 4
B. CADASTRAL SURVEY ........ 13
C. MINERALS MANAGEMENT SERVICE ........ 15
D. OFFICE OF HISTORICAL TRUST ACCOUNTING ........ 16
III. OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS ........ 19
A. TRUST REVIEW AND AUDIT ........ 21
B. OST-OFFICE OF THE CHIEF INFORMATION OFFICER ........ 23
1. RECORDS MANAGEMENT ........ 23
C. TRUST ACCOUNTABILITY ........ 26
1. TRUST BUSINESS PROCESS MODELING ........ 26
2. TRUST DATA QUALITY AND INTEGRITY ........ 28
3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM ........ 30
4. RISK MANAGEMENT ........ 32
5. REGULATIONS, POLICIES AND PROCEDURES ........ 33
D. FIELD OPERATIONS ........ 35
1. APPRAISAL ........ 35
E. TRUST SERVICES ........ 38
1. CURRENT ACCOUNTING ACTIVITIES ........ 38
IV. BUREAU OF INDIAN AFFAIRS ........ 43
A. TRUST REGULATIONS, POLICIES AND PROCEDURES ........ 43
B. FRACTIONATION ........ 45
C. PROBATE ........ 47
ACRONYMS AND ABBREVIATIONS ........ 49

## A. INFORMATION TECHNOLOGY

**Introduction**

This section describes the status of Interior IT systems, particularly the systems that house or provide access to IITD or provide various computing capabilities, including functions critical to the proper administration of the individual Indian trust responsibilities within Interior. In addition, this section describes various efforts being made to improve IITD security within Interior, pursuant to OMB Circular A-130 Appendix III, and the status of Internet connectivity.

**Accomplishments and Completions**

**Computer Security:**

Interior continues to make progress in ensuring IT security. A primary focus for this reporting period has been implementing corrective actions for weaknesses identified by the Interior penetration tests and audit of financial systems. Additional efforts were focused on:

- Performing continuous monitoring of Internet-accessible systems;
- Preparing submission of the annual FISMA report;
- Conducting annual IT security awareness and role-based training;
- Submission of annual assurance statements required to complete the annual PAR; and,
- Continuing to validate and improve the C&A packages completed previously.

The most noteworthy accomplishments and completions during the reporting period are described below.

*Prevention and Monitoring*

- Interior continued its extended vulnerability scan testing of Internet-accessible systems. The extended testing checks for approximately 7,400 different types of vulnerabilities, in addition to the SANS Top 20 vulnerabilities of previous testing. Since the last reporting period, Interior tested over 5,000 Internet-accessible network devices (for example, servers, routers, switches.) Initial results from January to April 2005 indicated over 5,000 potential vulnerabilities, but included many false positives and duplications. By the end of this reporting period, potential vulnerabilities were substantially reduced. This reduction results from routinely scanning network devices for potential vulnerabilities and working toward correcting or mitigating identified weaknesses. 121 vulnerabilities remained and continued to be mitigated as of the end of the reporting period.

- Potential incidents that were reported to DOI-CIRC during this reporting period include 22 successful incidents. None appears to have resulted in any known compromise of IITD. Successful incidents are those that were not prevented or blocked by Interior at the time of their occurrence.

- OIG completed a FISMA documentation review for OST, with no deficiencies noted during the review. The draft or final report has not been received.

- BLM conducted two significant, separate table-top contingency exercises of MAs and the enclave GSS. BLM conducted an exercise of the ALIS contingency plan on August 9, 2005. Multiple other MAs participated in a contingency plan exercise on September 14, 2005.

- As reported to the court on September 2, 2005, a limited amount of IITD was discovered in BLM's LR2000 database on August 18, 2005. Internal access to LR2000 was immediately blocked. A data quality review was conducted by BLM. All IITD was removed from LR2000. The security module was modified to include access disclaimers requiring users to refrain from using LR2000 for any Indian trust-related work. Additional scans were completed on August 24, 2005. BLM's DAA approved access restoration on an internal basis as of August 26, 2005.

- MMS conducted monthly network vulnerability scans on internal servers and network devices. Due to the hurricane impacts to the Gulf of Mexico, including severe damage to MMS facilities, limited remediation occurred for the August and September scan results. The tracking system in New Orleans was not restored until after the end of the reporting period.

- As reported to the Court on August 25, 2005, MMS detected an unauthorized change of an administrator password on the MRMSS externally-hosted portal in August 2005. The incident is still under investigation with the OIG and FBI. Based upon the investigation to date, there is no reason to believe the integrity of any data was compromised. Changes have been made to increase event monitoring at both the perimeter firewalls and application. Security scans of the application have been conducted, additional scans are scheduled. Final security scans and a security review are expected to be conducted by an independent third party contractor.

- NBC initiated remediation activities to address vulnerabilities identified in the second OIG penetration testing conducted on NBC systems in July. Personnel data was accessed, in the course of testing NPS systems. Immediate action was taken on critical vulnerabilities and NBC continues to track progress of remaining tasks from both penetration testing exercises.

***Policies and Guidance***

- The Interior CIO issued OCIO Directive 2005-012, "Wireless Network Security," to the bureau and office chief information officers on July 29, 2005. This directive outlines the security requirements for wireless networking devices within Interior and requires adherence to "Wireless Security Technical Implementation Guide," Version 2.0, July 21, 2005. The CIO also approved the "DOI Wireless Data Communications Strategy" on August 3, 2005.

- The Interior CIO issued a memorandum, "Implementing OCIO Directive 2005-007 for 4th Quarter Plans of Action and Milestones (POA&M) and 4th Quarter Federal Information Security Management Act (FISMA) Performance Measures," to the heads of bureaus and offices on August 18, 2005. This memorandum provides guidance in completing POA&Ms and FISMA performance measures in accordance with OMB requirements and Interior OCIO Directive 2005-007.

- The Interior CIO issued a memorandum, "External Vulnerability Scans – MCI Service," to the Deputy Secretary, assistant secretaries and heads of bureaus and offices on September 12, 2005. This memorandum outlines the vulnerability scanning program conducted by MCI. It requires bureaus to address systems with critical vulnerabilities first, and to isolate from the Internet vulnerable systems or services until the issue can be resolved, if the vulnerabilities can not be immediately remediated or identified as false positives.

- The Interior CIO issued a memorandum, "Temporary Approval of Wireless Technologies Waiver Requests to Support Emergency Efforts," to the assistant secretaries and heads of bureaus and offices on September 23, 2005. This memorandum provides specific criteria and conditions regarding the use of wireless technologies or access to non-Interior provided wireless networks to enable efficient implementation of the Federal National Response Plan.

- The Interior CIO issued OCIO Directive 2005-015, "Information Technology (IT) Audit Findings and Corrective Actions," to the heads of bureaus and offices on September 26, 2005. This directive supplements existing policies and guidance to improve the overall quality of IT audit findings and responses.

*Training and Awareness*

- Overall, 98% of Interior employees and contractors who use or access Interior computer systems completed the Interior FY2005 required annual end user Federal information systems security awareness training. 66% of employees with significant IT security responsibilities received specialized training, as described in NIST Special Publication 800-16 *Information Technology Security Training Requirements: A Role- and Performance-Based Model.*

    - All required BLM, MMS, SOL, OHA, Office of the Secretary and Office of the Assistant Secretary – Indian Affairs employees and contractors completed the end user training. 98% of the required OST employees and contractors completed the Interior FY2005 annual training. 97% of BIA staff completed the training. The remaining BIA staff who did not receive training (289 Indian Education employees) do not require computer access, or left BIA employment prior to the reporting deadline.

    - The BLM, MMS and OHA employees and contractors with significant IT security responsibilities received specialized training. 97% of Office of the Secretary, 66% of

SOL and 58% of OST employees with significant IT security responsibilities received specialized training

- In September 2005, the Deputy Assistant Secretary – Indian Affairs/CIO sponsored three workshops on recent and evolving NIST security requirements, specifically covering FIPS 199 and NIST SP 800-53 guidance for system characterization and for selecting appropriate security controls. A total of 50 BIA and other Interior bureau staff (including both Federal employees and contractors) attended the three sessions offered.

- The quarterly Fall 2005 MMS Information Security Awareness Newsletter was distributed to MMS employees and contractors on September 23, 2005, to keep users abreast of IT security issues.

**Plans of Action and Milestones:**

Interior tracked 1,730 POA&M recorded weaknesses, of which 529 weaknesses were identified this quarter and 1,201 (reported incorrectly in the previous status report as 1,206 due to a data transposition error) weaknesses were carried over from the third quarter. Interior remediated and closed out 416 weaknesses this quarter. Interior is currently tracking 1,314 open weaknesses. All bureaus and offices with trust systems certified the completion of POA&M corrective actions.

**A-130 Certification and Accreditation:**

Ninety-eight percent of Interior systems have full authority to operate (ATO) status. The C&A packages for all of those systems have been reviewed by a qualified third party for compliance with A-130 standards and requirements. 74% of the reviewed packages received passing scores. C&A packages that had not met minimum compliance review scores on initial reviews continue to be improved.

OST completed an update of its IT contingency plan, its disaster recovery plans for 5 minor applications running within OSTNet, and its SSP for OSTNet. OST updated its ST&E Guide for OSTNet to incorporate FIPS 199 and NIST SP 800-53 requirements. OST evaluated OSTNet using the updated ST&E, which resulted in an update to the OSTNet risk assessment. OST conducted a table-top disaster recovery and continuity of operations exercise.

Due to the recent implementation of Active Directory and new security controls, OHA initiated a re-certification and accreditation of OHANet. As part of this process, OHA validated the information types, information security categorization, and corresponding system characterization.

SOL completed its first C&A and received full authority to operate SOLNet.

**IT Systems Architecture:**

Interior completed a Departmental Solution Development Life Cycle document, which more tightly couples EA, CPIC, and security requirements during development or acquisition of IT systems.

EA is dynamic. As systems are deployed and others are decommissioned, the architecture changes. Therefore, the updating, population and maintenance of the DEAR is a continual process that occurs every quarterly reporting period. Bureaus are required to keep the repository accurate and current.

***DOI Land and Resource Management System (DLRM)***

As previously reported, the DLRM system is expected to provide a long-term solution for the legacy functionality of the CGI leasing software module, formerly a part of the TAAMS project. A pre-solicitation notice for DLRM was published on August 21, 2005, but the solicitation was subsequently cancelled. In order to go forward with the project, functional requirements for all Interior land and resource management mission areas need to be validated to define a comprehensive enterprise capability and funding strategy.

**ESN:**

- MMS completed the connection to the ESN Internet gateway for the Herndon, VA, and Denver offices this reporting period. The New Orleans Regional Office was connected to ESN in mid-October, having been delayed due to the recent hurricanes in the Gulf.

- NBC, NPS and OSM were connected to the ESN Internet gateway this reporting period.

**Current Status**

ZANTAZ

- ZStage refers to a ZANTAZ software indicator which shows whether an e-mail message has been properly processed. Interior addressed the ZStage issue in a September 11, 2005, filing and at a September 15, 2005, status conference.

- During this reporting period, OST discovered a limited processing problem identified by reviewing ZStage data and took steps to mitigate it. OST is expecting to send 160 tapes to ZANTAZ to recover missing data from February 19, 2005, to September 8, 2005. OST engaged an independent third party contractor to conduct a complete review of the OST electronic mail environment, identify any ZANTAZ issues or problems, and develop corrective actions. Receipt of analysis reports and corrective actions plans is pending.

- NBC determined that the incident discovered on June 21, 2005, noted in the previous reporting period, will require 419 back-up tapes to be sent from DC to ZANTAZ for

processing. The incident covered the period of August 28, 2004, through August 13, 2005, when a fix was implemented. NBC Denver has not yet resolved the incident, but estimates 46 back-up tapes will need to be sent for processing.

- On October 7, 2005, SOL's configuration was corrected by ZANTAZ. All messages are now going to the Digital Safe. SOL expects to send 96 tapes to ZANTAZ to recover missing data from February 22, 2005 to October 7, 2005.

- BIA expects to send 280 backup tapes to ZANTAZ to recover missing data from October 25, 2003 through January 27, 2005. Tapes covering earlier periods were previously sent to ZANTAZ (the last tape processed by ZANTAZ was on October 24, 2003, which included the Juneau server.)

- Tape delivery and subsequent restoration cannot proceed until Interior has completed its contract negotiations with ZANTAZ. Accordingly, the OCIO cannot at this time estimate a date for the delivery of the tapes to ZANTAZ.

**Reports:**

These reports are likely to be of interest to the Court, including several that were issued following the end of this reporting period.

- Interior anticipates filing the FISMA report and the OIG annual evaluation with the Court in the near future.

- OIG issued *The Department of the Interior's Process to Manage Information Technology Security Weaknesses*, Report No. A-EV-MOA-0001-2005, on September 23, 2005. OIG recommended that Interior declare a material weakness with respect to the POA&M process based on its review of POA&Ms from September and November 2004. OIG sampled 133 corrective actions that were reported as having been completed, and opined that 48% of those actions had not been implemented to his satisfaction.

  As noted in this OIG report, the CIO concluded that Interior's existing POA&M process is adequate, and that the OIG assessment of POA&Ms was based on reviews conducted early in FY2005 and did not reflect subsequent improvements implemented to correct noted issues. These improvements included requiring additional verification and validation of completed corrective actions. For each quarterly POA&M submission, bureau and office CIOs review the completed POA&M corrective actions, and attest to their implementation prior to noting the action as closed on the POA&M.

- OIG, through its contractor, was unsuccessful in its efforts to penetrate the MMS systems. OIG Report *NSM-EV-MMS-0021-2005 MMS Penetration Testing* noted that no significant vulnerabilities were discovered that would allow penetration into MMS networks or

unauthorized access to information. MMS is reviewing the final report for inclusion of identified weaknesses on the POA&M.

- As reported to the Court on September 28, 2005, OIG issued the results of its Phase 3 penetration testing on September 6, 2005. Phase 3, conducted between May and mid-August 2005, included penetration testing on FWS, NPS and OSM. The report also included the completion of BOR National Critical Infrastructure Information Systems reviews. Phase 3 test results show that OIG was not able to penetrate FWS and OSM, but that a penetration of NPS allowed testers to traverse to NBC's systems without detection. OIG also found that "the SCADA systems are operating in relative safety from potentially catastrophic cyber-security threats."

- GAO issued "Information Security: Weaknesses Persist at Federal Agencies Despite Progress Made in Implementing Related Statutory Requirements" (GAO-05-552). This report is based on agency reports of FY2003 and FY2004 and related GAO reports from FY2003 through FY2005. Although it notes that the government is making progress in implementing FISMA, it finds pervasive weaknesses in information security policies and practices across all major agencies. As this report assesses the challenges in implementing IT security programs government-wide, it may or may not be of interest to the Court.

## Delays and Obstacles

There are many challenges that must be addressed regarding the integration, performance, funding, security, and data integrity of IT systems generally. Like other federal agencies, Interior must address these challenges for its IT systems. Interior initiated or completed steps to address some of the challenges reported in this and previous reporting periods. However, delays and obstacles listed here impede progress in achieving Interior's IT management goals:

### Hurricane Katrina

- Hurricane Katrina has had severe impacts on resources. Key staff members for MMS IT security are based out of the New Orleans office, and were unable to work or only able to work sporadically since the event. MMS temporarily shut down its computing facility in New Orleans. This facility will be restored to service as soon as conditions warrant and resources are available. Essential systems have been relocated and/or restored at other MMS sites and are available. A temporary office was established in Houston that may operate for up to one year. The results of these efforts demonstrated the workability of the MMS business continuity plan.

### Litigation

- Collection and production of documents and court appearances continued to place significant strain on available staff and contractor resources throughout much of this reporting period, resulting in substantial delays in accomplishing planned and required work. The extent of the effort required for this document production resulted in significant backlogs and

rescheduling that will hamper Interior's efforts for months to come. Production of documents has exceeded 4.5 million pages. This litigation continued to impact:

- FISMA compliance actions
- Interior's financial audit
- OMB and Congressional reporting requirements
- Migration to a single e-mail messaging system
- Migration to a single Active Directory system
- Complying with HSPD-12 for implementing E-Authentication in Interior
- Delay in moving Interior bureaus and offices to a single WAN
- Updating Interior policies to fully comply with issued guidance and regulations

- Employee fears about becoming personally implicated in the *Cobell* litigation continued to be heightened as individuals from varying levels in Interior were required to testify at the evidentiary hearing. These fears continue to undermine communication and decision-making, and along with burn-out from demands for volumes of document production, are contributing factors to low employee morale.

**Staffing**

Interior is experiencing high staff and management turnover in critical IT positions, particularly IT security. For example, the Department's Chief Information Security Officer resigned on October 11, 2005. Resulting impacts to communication, efficiency, and oversight are impeding IT security service area functions.

**Funding and Resources**

- Considerable expense was incurred as a result of collecting and producing over 4.5 million pages of material for the litigation. This expense diminished the funding available for security improvement and program evaluation.

- With the significant increase in FISMA reporting required by OIG, the resources (time, personnel, and funding) provided for IT security-related activities were diminished. Interior continues to prioritize its FISMA needs in its budget requests within fiscal constraints.

- Funding availability will continue to dictate the timing of IT-related initiatives. Interior's FY2006 budget will require managing a variety of IT-related requirements and tradeoffs.

**Denied Internet Access**

- Several Interior bureaus and offices (BIA, OHA, OST and SOL) have not been permitted by the Court to have Internet access since December 5, 2001. Lack of Internet access impedes work processes and the ability to communicate effectively, both internally and externally. For example, lack of connectivity hampers internal communication among bureaus providing customer service to individual Indians at FIMO located in the BLM Farmington Field Office.

- Maintaining security on internal systems is more difficult without access to the Internet for research, reporting, and patch management. Similarly, promulgation of policy and training is substantially hampered by the lack of interconnectivity and Internet access.

**Assurance Statement**

I concur with the content of the information contained in the Information Technology section of the *Status Report to the Court Number Twenty-Three*. The information provided in this section is accurate to the best of my knowledge.

Date: October 31, 2005

Name: *Signature on File*
W. Hord Tipton
Interior Chief Information Officer

## B. OST-OFFICE OF THE CHIEF INFORMATION OFFICER

### 1. RECORDS MANAGEMENT

**Introduction**

The Office of Trust Records was established in 1999 to develop and implement a program for the economical and efficient management of trust records, consistent with the 1994 Act, the Federal Records Act and other statutes and implementing regulations. The OTR records management program has been developed and implemented, and continues to evolve, to ensure that necessary Indian records are maintained, records retention schedules are consistent with retention needs, and records are safeguarded throughout their life-cycles.

As reported in the *Status Report to the Court Number Eleven*, the line authority for supervision and management of OTR was vested in the Assistant Deputy Secretary by the Deputy Secretary by memorandum dated September 5, 2002. On September 30, 2005, the memorandum was rescinded by the Associate Deputy Secretary. Accordingly, effective October 1, 2005, OTR reports to the Chief Information Officer, OST, in accordance with the pertinent provision of the Departmental Manual.

**Accomplishments and Completions**

**American Indian Records Repository**

Approximately 122,420 indexed boxes are located in the AIRR as of the end of this reporting period. As previously reported, OTR has historically reported the number of boxes transferred to AIRR for storage. However, NARA uses cubic feet as the measure for records stored. Thus far, NARA reports that they are currently storing 128,790 cubic feet of indexed inactive records at AIRR. Some boxes are larger than one cubic foot (e.g., map boxes).

**Records Indexing Project**

Indexing of approximately 124,325 boxes has been completed as of the end of this reporting period. The number of completed boxes (indexed and quality reviewed) differs from the number of boxes stored at AIRR because not all completed boxes were sent to AIRR from the Annex before the end of the reporting period.

Approximately 6,745 boxes of inactive records were moved from BIA/OST field locations to the Lenexa Annex for indexing during this reporting period. Once indexed, these boxes will be stored in the AIRR.

As previously reported, the electronic BISS was classified as a Privacy Act system of records by Interior. The Privacy Act notice for this system was published in the Federal Register on

July 29, 2005. The notice provided that the classification would be effective as proposed, unless comments requiring a contrary determination were received within the 40-day comment period. No comments were received by the end of the 40-day comment period.

**Training**

OTR provided records management training for 261 BIA and OST identified records contacts and 13 tribal employees during this reporting period.

**Equipment Purchases**

91 pieces of fireproof filing equipment were delivered to BIA and OST offices during this reporting period. Additional requests will be responded to as received.

**Current Status**

**Safeguarding Records**

As reported, 283 boxes of inactive records that were or may have been damaged or contaminated by mold, mildew, mouse droppings or other adverse elements were shipped to NARA for remediation in the previous reporting period. All boxes have been reviewed and cleaned. There are approximately 30 boxes which NARA has determined require further care. These records were previously exposed to fire and water. It is anticipated that these records will receive further attention in the next reporting period.

**Record Keeping Requirements**

The "Final Decision Regarding Self-Determination and Self-Governance Funding Agreement Language on Fiduciary Trust Records Management" was published in the Federal Register on August 29, 2005. The Final Decision states that "the Department decided not to institute the proposed policy on fiduciary trust records management for Title I and Title IV Tribes/Consortia; rather, the Department will negotiate with each Tribe/Consortium a specific section in the funding agreement that addresses the Tribe's/Consortium's and the Secretary's respective responsibilities regarding the management of fiduciary trust records." The notice did provide specific language for fiduciary trust records management which was to be negotiated into the agreements for FY2006.

**National Archives Records**

As reported in the OTR Activity Report for August 2005 (filed on September 19, 2005), OTR received a copy of a letter dated September 13, 2005, from NARA to the Assistant Deputy Secretary of the Interior regarding an incident involving records at the Main Archives in Washington, DC. OTR also received a copy from the Assistant Deputy Secretary of a letter dated September 28, 2005, from NARA to Dennis Gingold, Esq.

**Records Retention Schedules**

OTR has not yet received approval from the Archivist of the United States of the following electronic systems records schedules that were submitted in the previous reporting period: Anadarko REM, InfoDat and CFI. OTR is working with BIA to provide NARA with additional technical analysis related to the GIS schedule. The BISS records schedule was submitted to NARA during the previous reporting period and was inadvertently not included in the previous report. NARA requested that certain changes be made to the BISS records schedule and it was resubmitted on September 29, 2005 after the changes were made.

The following five BIA electronic systems records schedules were submitted to NARA for appraisal and approval on September 29, 2005: MADS, Keyfile System, GLADS, Alaska Title Plant Database, and Land Title Mapper.

**Records Evaluation**

As previously reported, 31 boxes set aside for evaluation remain at OTR in Albuquerque pursuant to a litigation hold. There has been no change during this reporting period.

**Delays and Obstacles**

Lack of Internet access continues to hinder OTR's ability to provide remote access to the record index database for authorized users of the records. If Internet access were available, authorized researchers could conduct their searches from their respective work sites and only visit AIRR when necessary to inspect specific boxes.

**Assurance Statement**

I concur with the content of the information contained in the Records Management section of the *Status Report to the Court Number Twenty-Three.* The information provided in this section is accurate to the best of my knowledge.

Date: October 17, 2005

Name: *Signature on File*
Ethel J. Abeita
Director, Office of Trust Records
Office of the Special Trustee for American Indians

## 3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM

### Introduction

Interior has a continuing responsibility to provide adequate staffing, supervision and training for trust fund management and accounting activities. Fiduciary trust training is essential to the success of Interior's trust reform efforts and forms an integral part of all training for Interior employees who are involved in the management of Indian trust assets.

### Accomplishments and Completions

OST offered one session of the course, *Fiduciary Overview Program*, presented by Cannon Financial Institute, with 14 OST, BIA and tribal personnel attending during this reporting period. A total of 684 people have attended this course since March 2003. This course compares and contrasts the federal Indian trust administered through Interior with private sector trusts administered through banks and other financial institutions.

During this reporting period, Cannon Financial Institute personnel also presented the *Risk Management, Guardianship, Fiduciary Behavior* and *Asset Management* specialty courses to 145 OST, BIA and tribal personnel. These four courses are part of the previously reported certification program. Additional sessions of *Risk Management, Wills & Probate, Accounting and Asset* Management are expected to be presented during the next reporting period.

During this reporting period, OST training staff conducted 4 sessions to provide training in TFAS, CSS, StrataVision and the historical query database to 41 OST, BIA and contractor staff.

OST and BIA staff presented the three-day course, *Trust Fundamentals,* to 30 OST, BIA and tribal staff. This course includes such topics as the history and policy of Indian trust, current trust reform activities, job roles and responsibilities, and organization and working relationships. This course is expected to be presented again during the next reporting period.

During this reporting period, OST training staff conducted 9 sessions to provide Lockbox process training to 250 OST, BIA and contractor staff.

### Current Status

Construction continues on the NIPTC in Albuquerque and is expected to be completed by the end of CY2005. The first NIPTC governance board meeting was held this reporting period. The governance board consists of employees from OST, BIA, MMS, BLM, the U.S. Fish and Wildlife Service National Conservation Training Center and DOI University. At this meeting, the board discussed its roles, responsibilities and objectives. It plans to meet on a quarterly basis.

**Delays and Obstacles**

The lack of Internet access inhibits electronic communication with other governmental agencies and contractors, hinders the research of training tools and potential contractors, and restricts OST's ability to access online training programs.

**Assurance Statement**

I concur with the content of the information contained in the Indian Fiduciary Trust Training Program section of the *Status Report to the Court Number Twenty-Three.* The information provided in this section is accurate to the best of my knowledge.

Date: October 20, 2005

Name: *Signature on File*
Dianne M. Moran
Director, Trust Training
Office of the Special Trustee for American Indians

# EXHIBIT 19:

# 28TH INTERIOR REPORT,

# FEBRUARY 1, 2007

# Status Report to the Court
# Number Twenty-Eight

**For the Period**
**October 1, 2006 through December 31, 2006**

February 1, 2007

## TABLE OF CONTENTS

INTRODUCTION ..... 1
I. OFFICE OF HISTORICAL TRUST ACCOUNTING ..... 3
II. OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS ..... 9
A. TRUST SERVICES – CURRENT ACCOUNTING ..... 11
B. OFFICE OF TRUST RECORDS ..... 15
C. TRUST ACCOUNTABILITY ..... 19
1. TRUST BUSINESS PROCESS MODELING ..... 19
2. TRUST DATA QUALITY AND INTEGRITY ..... 21
3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM ..... 25
4. RISK MANAGEMENT ..... 27
5. TRUST REGULATIONS, POLICIES AND PROCEDURES ..... 29
D. TRUST REVIEW AND AUDIT ..... 31
E. OFFICE OF APPRAISAL SERVICES ..... 33
III. INDIAN AFFAIRS ..... 37
A. TRUST REGULATIONS, POLICIES AND PROCEDURES ..... 37
IV. BUREAU OF INDIAN AFFAIRS ..... 39
A. FRACTIONATION ..... 39
B. PROBATE ..... 41
V. OTHER TOPICS ..... 43
A. INFORMATION TECHNOLOGY ..... 43
B. CADASTRAL SURVEY ..... 51
C. MINERALS MANAGEMENT SERVICE ..... 55
ACRONYMS AND ABBREVIATIONS ..... 57

## B. OFFICE OF TRUST RECORDS

### Introduction

The Office of Trust Records was established in 1999 to develop and implement a program for the economical and efficient management of trust records, consistent with the 1994 Act, the Federal Records Act and other statutes and implementing regulations. The OTR records management program has been developed and implemented, and continues to evolve, to ensure that necessary Indian records are maintained, records retention schedules are consistent with retention needs, and records are safeguarded throughout their life-cycles.

### Accomplishments and Completions

**American Indian Records Repository**

The American Indian Records Repository was built by Interior in collaboration with NARA for the purpose of consolidating and preserving Indian records at one NARA regional records center. The facility, located in Lenexa, Kansas, opened in May 2004. Prior to the opening of AIRR, Indian records were stored in various NARA regional records centers, BIA, and other government facilities across the United States. All Indian records from the NARA centers have been shipped to AIRR, while records continue to be collected from the other locations for shipment to AIRR. Indian records are indexed at the AIRR Annex before being transferred to AIRR for storage. A file level index of the contents of each box is stored in an electronic data base called the Box Index Search System.

Approximately 4,030 boxes of inactive records were moved from BIA/OST field locations to the Lenexa Annex for indexing during this reporting period. Indexing of approximately 151,675 boxes has been completed as of the end of this reporting period. Approximately 150,745 indexed boxes have been sent to AIRR for permanent storage.

**Training**

OTR provided records management training for 107 BIA and OST records contacts and 51 tribal employees during this reporting period. OTR provided records management training to Tribes as they requested training.

### Current Status

**Safeguarding Records**

As previously reported, since June 2005, NARA has completed remediation of all but six of the previously-reported 283 boxes of inactive records that were damaged or contaminated by mold, mildew, mouse droppings or other adverse elements.

The materials NARA could not repair consisted of one box that has about 25% of its contents covered with a tar-like substance; one entire box that had mold and the files are stuck together; and one box of green bar printouts from 1989 oil and gas royalty disbursements that have holes in the printout caused by insects. Three boxes have extensive water damage and the contents are stuck together. Although NARA recommended that the documents should not be separated, an independent conservator indicated that it would be possible to salvage some of the information through physical stabilization or recovery of the information through reproduction techniques.

In November 2006, OTR's conservation contractor conducted an in depth review of the box contents and drafted a remediation plan. OTR has determined that there are two boxes that may contain trust records and should undergo repair/conservation. The other boxes do not contain trust records and will be stored at the AIRR without remediation treatment. Based on the contractor's estimate, the remediation and conservation work, which will be labor intensive, is expected to be completed by the end of February 2007.

Also, as previously reported, NARA recommended copying for preservation purposes of maps from eight oversized boxes. However, several of the large maps are too big for NARA's copiers. Remediation of these maps by the contractor is expected to be completed by February 2007. OTR will review the maps once they have been treated and make a determination whether the maps should be copied using other methods.

**Records Retention Schedules**

Records retention schedules for the following BIA electronic records systems were completed in the previous reporting period and were forwarded to NARA in November 2006: National Irrigation Information Management System, PC Lease, San Carlos Irrigation Project, Document Management Program, and Integrated Transportation Information Management System. The BIA Geographic Information System records retention schedule continues to await approval by the Archivist of the United States.

Records retention schedules for the following BIA electronic records systems were developed and forwarded to NARA during the last week of December 2006: Social Services Assistance System, Progeny, Facilities Management Information System, Fee-to-Trust, Identity Information System, National Integrated Oil and Gas Electronic Management System, Timber Sales Accounting and Report Program/Operations Inventory and Colorado River Electrical Utility Management System.

Records retention schedules for the following OST electronic records systems were developed and forwarded to NARA during the last week of December 2006: Risk Management Plus, Trust Beneficiary Call Center, and Lockbox/Trust Funds Receivable Application.

Paper records retention schedules for the following OST offices were completed during the previous reporting period and were circulated for review by OST managers during this reporting period: Office of the Principal Deputy Special Trustee; Office of External Affairs; Office of the Chief Information Officer; Office of Budget, Finance and Administration; Office of the Deputy

Special Trustee, Trust Accountability; Office of the Deputy Special Trustee, Field Operations; and Office of the Deputy Special Trustee, Trust Services. It now is anticipated that the schedules will be forwarded to NARA in the next reporting period.

**Delays and Obstacles**

Lack of Internet access continues to hinder OTR's ability to provide remote access to the record index database for authorized users of the records. If Internet access were available, authorized researchers could conduct their searches from their respective work sites and only visit AIRR when necessary to inspect specific boxes or request documents from specific boxes.

**Assurance Statement**

I concur with the content of the information contained in the Office of Trust Records section of the *Status Report to the Court Number Twenty-Eight*. The information provided in this section is accurate to the best of my knowledge.

Date: January 12, 2007

Name: *Signature on File*
Ethel J. Abeita
Director, Office of Trust Records
Office of the Special Trustee for American Indians

## 3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM

### Introduction

Interior has a continuing responsibility to provide adequate staffing, supervision and training for trust fund management and accounting activities. Fiduciary trust training is essential to the success of Interior's trust reform efforts and forms an integral part of all training for Interior employees who are involved in the management of Indian trust assets.

### Accomplishments and Completions

The Cannon Financial Institute presented two Certification Review & Tests courses for the *Certified Indian Fiduciary Trust Specialist* certification program to 29 OST, two BIA and one tribal personnel. All 32 passed the exams and were awarded their certifications.

### Current Status

During this reporting period, Cannon Financial Institute personnel presented:

- One *Indian Fiduciary Trust Principles* course to 23 OST, BIA and tribal personnel. Completion of this course, passing an exam and reviewing a DVD entitled *Fiduciary Concepts* are requirements of the *Certified Indian Fiduciary Trust Analyst* certification.

- Eight specialty courses to 133 OST, BIA and tribal personnel. The specialty courses, *Risk Management, Probate, Trust Accounting, Asset Management*, *Fiduciary Behavior* and *Guardianships* are part of the *Certified Indian Fiduciary Trust Specialist* certification program.

During this reporting period, OST training staff conducted four training sessions for 69 OST, BIA, and contractor staff on the use of TFAS and related systems and reporting programs that include:

- CSS – used to enter, approve and post cash transactions;

- Stratavision – contains daily, weekly and monthly reports from OST systems for viewing by OST and BIA staff;

- Historical Query Database – contains account transaction history going back to 1985; and

- TFR – Trust Funds Receivable – used for tracking lockbox receipts.

OST and BIA staff presented three *Trust Fundamentals* courses to 70 OST, BIA, MMS, BLM, USGS, and tribal staff. This course includes such topics as the history and policy of Indian trust,

current trust reform activities, job roles and responsibilities, and organization and working relationships.

**Delays and Obstacles**

The lack of Internet access inhibits electronic communication with other governmental agencies and contractors, hinders the research of training tools and potential contractors, and restricts OST's ability to access online training programs.

**Assurance Statement**

I concur with the content of the information contained in the Indian Fiduciary Trust Training Program section of the *Status Report to the Court Number Twenty-Eight.* The information provided in this section is accurate to the best of my knowledge.

Date: January 11, 1007

Name: *Signature on File*
Dianne M. Moran
Director, Office of Trust Training
Office of the Special Trustee for American Indians

## V. OTHER TOPICS

### A. INFORMATION TECHNOLOGY

**Introduction**

This section describes the status of Interior IT systems, particularly the systems that house or provide access to IITD or provide various computing capabilities, including functions critical to the proper administration of the individual Indian trust responsibilities within Interior. In addition, this section describes various efforts being made to improve IITD security within Interior, pursuant to OMB Circular A-130 Appendix III, and challenges due to no Internet connectivity at four bureaus.

**Accomplishments and Completions**

**Computer Security:**
Interior continues to make progress in enhancing IT security through improvements to the vulnerability scanning process and the re-Certification & Accreditation of systems. The most noteworthy accomplishments, completions and challenges during the reporting period are described below.

***Prevention and Monitoring***

- An ESN contractor selected a new product to continue the on-going external vulnerability scanning service for Interior. Interior took the opportunity at this time to make the service available to bureaus for their internal vulnerability scanning solution.

***Policies and Guidance***

- The Interior CIO issued "Fiscal Year (FY) 2006 Assurance Statement for Information Technology (IT) Security" to the Assistant Secretary for Policy, Management and Budget on October 13, 2006. This report presented the summary assessment of the adequacy of bureau, office, and departmental (common) controls related to information systems and information technology programs. The CIO noted many "significant" accomplishments, including increased security through centralizing Internet gateways at ESN and enhancements in IT security training.

- The Interior CIO issued "Additional Guidance for the Protection of Personally Identifiable Information (PII) and Department Sensitive Information" to the heads of bureaus and offices and to bureau and office Chief Information Officers on December 15, 2006. This memorandum directed the bureaus to implement encryption for mobile devices (e.g., laptops and remote workstations/servers) as an interim solution until an Interior-wide encryption product can be procured.

- The Interior CIO issued "Internal Control Review (ICR) Guidance for Fiscal Year (FY) 2007" to the heads of bureaus and offices and to bureau and office Chief Information Officers on December 20, 2006. This directive provides specific guidance for IT system

owners and Bureau Information Technology Security Manager (BITSMs) for conducting annual assessments of the security controls in place for all IT systems contained in DEAR.

- The Interior CIO issued "Trust Asset and Accounting Management System (TAAMS)" to the Deputy Director, Office of Trust Services on December 27, 2006. This memorandum informed the Deputy Director that the TAAMS project would be subject to a project management review performed by OCIO.

- BLM issued two policies during this reporting period that provided system owners and project managers with the upcoming schedule for system C&A, and reminded all system owners of the requirement to apply funding towards sustaining and maintaining security certifications.

***Training and Awareness***

- BLM hosted an OST "Trust Fundamentals" class at its New Mexico State Office as part of its plan to elevate awareness of trust responsibilities and accountability.

**Plan of Action and Milestones[4]:**

- As reported to OMB, Interior has continued to remediate and close out a significant number of weaknesses, eliminating 266 during this reporting period. However, 444 new weaknesses were identified and added; many resulted from self-assessments, independent financial audits and findings based on OIG reports. Interior continues to proactively address the remaining 1,880 open weaknesses.

**IT Systems Architecture:**

- Interior revised the draft Trust Modernization Blueprint to include a more detailed analysis of the data managed by current information systems and how well those systems support the streamlined business processes in the Fiduciary Trust Model.

- The MMS EA Team completed the alignment of five major systems (four MAs and one GSS) with the five DOI/OMB reference models (Business, Performance, Data, Services and Technical).

[4] A Plan of Action and Milestones (POA&M), also referred to as a corrective action plan, is a management tool that outlines identified IT security program and system weaknesses, along with the tasks necessary to correct or mitigate them. To facilitate the remediation of weaknesses, the POA&M process provides a means of planning and monitoring corrective actions; identifies those responsible for solving problems; assists in identifying security funding requirements; tracks and prioritizes resources; and informs senior management of the security status of programs and systems.

**E-Authentication[5] and HSPD-12[6]:**

- The HSPD-12 contract was awarded during this reporting period. Upon awarding the contract, NBC began issuance of smart cards before an OMB-mandated deadline.

**Staffing:**

- The following positions were filled during this reporting period:
  - Interior's Security Program Manager, Security POA&M Lead and ZANTAZ Liaison,
  - NBC's CIO,
  - BLM's Deputy CIO, and
  - MMS's IT Security Manager.

**Current Status**

**A-130 Certification and Accreditation:**

- Of the 36 trust systems that are currently tracked in DEAR, all have full ATO status except the FWS Isolated Realty Network. The ST&E results and documentation for IRN are currently being reviewed. The system is expected to be fully accredited during the next reporting period.

- BIA completed the Trust Active Directory root services C&A package in August 2006. This system provides authentication services for TrustNet, which is the network supporting the disconnected bureaus. A meeting held in December 2006 resolved a majority of the issues without the need to develop an MOU. The remaining issues involve deployment of the system across the trust bureaus. Full accreditation is expected upon resolution of these issues.

- The re-C&A of MMSNet is in the ST&E phase and an MMS contractor completed testing of the system. MMS is awaiting results of the testing.

**ZANTAZ[7]:**

- The 25 BLM tapes that were shipped to ZANTAZ, as reported in the previous report, have been received. ZANTAZ informed Interior that they will process the tapes by the end of the next reporting period.

---

[5] E-Authentication is designed to provide a trusted and secure standards-based authentication architecture. This approach would provide a uniform process for establishing electronic identity and eliminate the need to develop redundant solutions for the verification of identity and electronic signatures. E-Authentication's distributed architecture would also allow citizens and businesses to use non-government-issued credentials to conduct transactions with the government.

[6] HSPD-12 would establish a common identification standard for all federal government employees and contractors for physical and computerized systems and data access while providing a roadmap for other applications. The HSPD-12 policy establishes sound criteria for verifying an employee's identity designed to be strongly resistant to identity fraud, tampering, counterfeiting and terrorist exploitation. The standard includes graduated criteria, from least secure to most secure, to ensure flexibility in selecting the appropriate level of security for each application.

[7] ZANTAZ is a contractor that archives emails sent to and from certain bureaus and offices.

- The contract was awarded in December 2006 for the forensic analysis of the 268 blank BIA tapes documented in the *Status Report to the Court Number Twenty-Five*. The analysis is expected to be completed in the next reporting period.

- The testing of the software to correct the NBC/BLM ZStage[8] irregularity reported in the *Status Report to the Court Number Twenty-Six* has been completed. BLM and ZANTAZ have determined that the upgrade will not correct the irregularity and they continue to work on identifying an alternative solution.

- SOL experienced a ZANTAZ outage from November 18–22, 2006. The outage was the result of a mis-configuration of a ZANTAZ device. No emails were lost since the SOL buffer server captured and re-transmitted all emails that were awaiting transmission to ZANTAZ.

**Training and Awareness:**

- A large number of NBC and MMS systems are due for re-C&A this fiscal year. Therefore, NBC and MMS are providing focused C&A training to management and staff.

**Incidents:**

- On December 28, 2006, four tribal computers, four tribal flash drives and an unknown number of tribal CDs were stolen from a 638[9] tribal office located on Yakama Nation property. This incident was reported to local police and remains under investigation. An OCIO task force continues to evaluate the types and sensitivity of the data involved and determine appropriate response actions.

- OHA reported potential misuse of a laptop computer in December 2006. The incident remains under investigation.

**Reports:**

These reports were among those issued during this reporting period.

- The Interior IG issued "Vulnerability Assessment Report of MMS Third Party Service Provider USinternetworking (USi) (NSM-EV-MMS-0009-2006)" on September 27, 2006. This report presents the results of an evaluation of a contractor system involved in hosting MRM data. In this report, the OIG indicates that the site is "reasonably secure, with security countermeasures commensurate with the data it is hosting."

---

[8] ZStage refers to a mechanism that verifies delivery of emails to the ZANTAZ digital safe. Each message is assigned a value indicating success or failure of delivery.

[9] A "638 Tribe" provides services to tribal members under the Indian Self-Determination and Education Assistance Act, Public Law 93-638 (as amended). This act authorizes Tribes to contract and compact with the federal government to perform certain federal programs.

- The Interior IG issued "FY2006 FISMA Report (NSM-EV-OIG-0002-2006)" on September 29, 2006. This report presents the results of the IG's annual evaluation of Interior's IT security program, as required by FISMA. It noted many "significant" accomplishments, including increased security through centralizing Internet gateways at ESN and enhancements in IT security training. However, the IG found that challenges still remain in the quality of C&A practices and the implementation of security configuration standards.

- The GAO issued "Agencies Need to Develop and Implement Adequate Policies for Periodic Testing (GAO-07-65)" on October 20, 2006. This report presented the results of a survey of 24 major federal agencies and their Inspectors General, as well as analysis of their information security policies and procedures. The GAO determined that agencies have not adequately designed or effectively implemented policies for performing periodic testing and evaluation of information security controls.

**Delays and Obstacles**

Like other federal agencies, Interior must address many challenges regarding the integration, performance, funding, security, and data integrity of IT systems. Interior initiated or completed steps to address some of the challenges reported in this and previous reporting periods. However, delays and obstacles listed below impede progress in achieving Interior's IT management goals.

**Staffing**

- Interior is experiencing high staff and management turnover in critical IT positions, particularly IT security. Recruitment challenges to attract qualified candidates continue, particularly in light of past litigation impacts.

- During this reporting period, the Interior CIO announced his retirement from federal service and that his last official day would be January 3, 2007. The Interior Deputy Secretary named the CIO for the Fish and Wildlife Service as the acting Interior CIO effective on January 4, 2007.

- The following positions remain vacant at the end of this reporting period:
  - Interior's Deputy CISO and Security Policy Lead,
  - NBC's Deputy CIO and IT Security Manager,
  - MMS's MRM IT Security Manager,
  - BLM's IT Security Manager, and
  - BIA's CIO and C&A Project Manager.

**Funding and Resources**

- Interior continues to operate under a continuing resolution, impacting the ability of Interior to fill personnel vacancies, complete projects and meet deadlines.

**Denied Internet Access**

Four Interior bureaus and offices (BIA, OHA, OST and SOL) have not been permitted by the Court to have Internet access since December 5, 2001. Lack of Internet access impedes work processes and the ability to communicate effectively, both internally and externally. For example:

- Currently the BIA Transportation Division utilizes an application system titled the Integrated Transportation Information Management System to manage and report on the maintenance of roads, bridges and the core transportation infrastructure within Indian country. ITIMS does not contain any IITD. However, being offline significantly inhibits BIA's ability to interface with the Tribes, share information and effectively manage millions of dollars in BIA and Federal Highway funds. The BIA Transportation Office would like to implement a replicated version of ITIMS, which would be totally isolated from TrustNet, but be accessible via the Tribes through a direct connection to the Internet. Data would be synchronized between the two networks using physical/removable media. This synchronization and replication would not be necessary but for the Court order.

- On October 16, 2006, the Trust Executive Steering Committee authorized a pilot project to permit additional Tribes to access TrustNet in compliance with federal security requirements. The Morongo Band of Mission Indians is the first Tribe that Interior is working with under this pilot project. Under a Memorandum of Understanding and Tribal Use Agreement, tribal employees would have access to an Interior computer and would be treated similarly to federal employees and contractors with access to TrustNet. All appropriate IT security directives will be extended to the Tribe and its users. The Morongo Band has agreed to the terms of the Memorandum of Understanding and Tribal Use Agreement as well as unannounced IT security visits, and made all the recommended changes to support physical security requirements requested. Without the Court order, trust connectivity, such as that sought here, would be less complex, less costly, and could be accomplished more quickly.

- Maintaining security on internal systems is more difficult without access to the Internet for research, reporting, and patch management.

- Policy discussion is hampered due to additional time required in coordinating group discussions via teleconferencing when e-mail collaboration would be more appropriate and timely.

- OMB's e-Government initiative requires agencies to web-enable as many of their applications as possible. Without internet access, Interior cannot comply with this and other OMB initiatives, like consolidation of agencies' network infrastructures.

- The concerns over potential future Court-ordered Internet shutdowns or other Court-ordered disruptions has created uncertainty over how to proceed with enterprise initiatives and security improvements. Without connectivity between the disconnected and online bureaus and offices, implementation of true enterprise-wide applications has been difficult. Plans and funding call for only a single instance of an application to service all bureaus and offices. Many of these applications rely upon the internet to service external as well as internal customers. Providing access to the disconnected bureaus and offices would eliminate duplicate systems, networks, and data. Duplicate systems require a significant increase in resources to manually transfer data between the two systems. The possibility of future disruptions also raised concern about Interior's ability to provide services to its non-Interior customers.

- Coordination and dissemination of new policies and training is delayed due to the need to deliver material physically. Even after receipt, considerable re-work is required to tailor web-based training programs to run locally. Courses normally are completed on-line through DOI LEARN, but also must be duplicated in stand-alone CD-ROM and paper forms for the off-line bureaus.

- Ensuring continuity of operations and continuity of government through the implementation of contingency plans requires rapid notification of an event. The lack of Internet access degrades Interior's capabilities to notify all of its bureaus and offices in a timely and efficient manner. Additionally, without remote access, disconnected bureaus and offices will be unable to provide services to their customers in the event of extended contingency periods that may result from pandemics or major natural events.

**Assurance Statement**

I concur with the content of the information contained in the Information Technology section of the *Status Report to the Court Number Twenty-Eight.* The information provided in this section is accurate to the best of my knowledge.

Date: January 25, 2007

Name: *Signature on File*
Michael J. Howell, Jr.
Interior Acting Chief Information Officer

*THIS PAGE INTENTIONALLY BLANK*