IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SEMINOLE NATION OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-CV-935-L |
| | ) | |
| THE UNITED STATES, | ) | Judge Margaret M. Sweeney |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Appendix A of the Rules of the Court of Federal Claims (RCFC), Plaintiff Seminole Nation of Oklahoma (Plaintiff or Tribe), and Defendant United States of America (Defendant or United States) hereby submit this Joint Preliminary Status Report (JPSR).

## I. PLAINTIFF'S INTRODUCTORY STATEMENT

On December 29, 2006, Plaintiff filed this case against the United States under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. Docket No. (Dkt. No.) 1.

Plaintiff alleges claims for breach of fiduciary duties and breach of treaty obligations by Defendant in its administration of Plaintiff's trust funds, and seeks a proper accounting, reconciliation and certification of the Tribe's trust funds; monetary damages; pre-and post-judgment interest; costs; fees and expenses of experts and attorneys; and any other relief that this Court deems equitable and just.

## II. DEFENDANT'S INTRODUCTORY STATEMENT

### A. Background

On December 29, 2006, Plaintiff filed this case against Defendant. Compl., Dkt. No. 1. Since that time, it has filed a First and Second Amended Complaint. *See* [First] Am. Compl (Fed. Cl. March 23, 2007), Dkt. No. 9, and [Second] Am. Compl. (Fed. Cl. Mar. 28, 2008), Dkt. No. 25.

Plaintiff contends that this Court has jurisdiction under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. *Id.* ¶ 4. On the face of that Complaint, Plaintiff broadly alleges that Defendant has breached its fiduciary duties in administering Plaintiff's trust funds and non-monetary trust assets, and Plaintiff seeks compensatory and monetary damages. *See, e.g., id.*, *Prayer for Relief* ¶¶ 1-4.

Also on December 29, 2006, Plaintiff filed a companion case against Defendant, namely, against the Secretaries of the Interior and the Treasury and the Special Trustee for American Indians, in the United States District Court for the Eastern District of Oklahoma. *Seminole Nation of Oklahoma v. Kempthorne*, No. 06-cv-00556-SPS (E.D. Okla.), Dkt. 1. On the face of that complaint, Plaintiff broadly alleges that Defendant breached its fiduciary duties regarding the accounting and management of Plaintiff's trust funds and assets, and Plaintiff seeks declaratory and injunctive relief. *Id.*

As set forth in its Answer filed in this case on June 10, 2008, Dkt. No. 42, and as discussed in greater detail below, Defendant asserts various jurisdictional defenses that bar some or all of Plaintiff's claims.

28 U.S.C. § 1500 divests this Court of jurisdiction over this case because of the pendency of Plaintiff's case in the District Court for the Eastern District Court of Oklahoma (the District Court). Accordingly, Defendant filed a motion to dismiss this case on § 1500 grounds on August 7, 2008. Def.'s Mot. to Dismiss, Dkt. No. 52. To promote judicial efficiency, economy, and conservation of limited resources after Defendant filed a motion to dismiss, this Court should stay the litigation of the rest of this case, any and all discovery, and other dispositive motions, until it adjudicates the motion to dismiss.

Assuming, *arguendo*, that this case is not dismissed under 28 U.S.C. § 1500, Defendant expects to assert other jurisdictional defenses, but it cannot do so until after Plaintiff has specified its claims and the factual and legal bases underlying them. Depending on the substance and bases of Plaintiff's claims, Defendant may argue that the claims are barred on grounds, such as the statute of limitations, *res judicata*, the exclusive jurisdiction of the Indian Claims Commission Act (ICCA), and a lack of jurisdiction for failure to state money-mandating claims. For these reasons, Defendant proposes approaching this case with a phased case development and trial strategy.

To the extent that this Court has jurisdiction over any of Plaintiff's claims, Defendant believes that this Court can resolve Plaintiff's claims through dispositive motions, trial, or both. At this time, however, in order to maximize the Court's and the parties' efficiency and promote the conservation of limited resources, Defendant proposes postponing the scheduling of such activities as the parties' exchanges of RCFC 26 initial disclosures; any fact or expert witness discovery; and any pretrial and trial dates, until after the Court has ruled on the threshold jurisdictional issues.

B. Proposed Division of Case into Phases

In the event that the case is not dismissed under 28 U.S.C. § 1500, Defendant proposes, based on its understanding of Plaintiff's claims (including the alleged temporal and subject matter scope of the claims), as set forth in the Amended Complaint, that the litigation of the merits of the case be divided into the phases delineated below. Only Phase I would be placed on a trial track at this point, although certain document and data discovery relating to Phases II and III could be accomplished at the same time as related discovery for Phase I, because such an approach would likely maximize or enhance litigation efficiency and economy. Defendant hopes that the resolution of Phase I—through litigation, alternative dispute resolution, or trial—will assist the parties and facilitate the parties'

resolution of the remaining phases of this case (as well as the claims that Plaintiff has asserted in the companion case in the District Court).

Depending on the prospects for settlement or other alternative resolution of this case (and Plaintiff's companion case), this Court may deem it appropriate to place the Phase II claims on a trial track, following the conclusion of the litigation of Phase I. Likewise, depending on the progress of the litigation of this case, further dividing the Phase II claims into discrete time periods or claims may be appropriate. Defendant proposes that the Court and the parties make the determination regarding the handling of Phase II, after the conclusion of the Phase I litigation.

1. *Phase I: Plaintiff's Trust Fund and Non-Monetary Trust Asset Mismanagement Claims Arising From 1972 to Present*

Phase I would address all of Plaintiff's claims about Defendant's alleged mismanagement of Plaintiff's trust funds (including any alleged associated trust accounting claims, any deposit and investment claims, and any claims regarding the management of Plaintiff's judgment funds), from 1972 to present. Among other things, this phase would include the period from July 1, 1972, to September 30, 1992, which is the period for which the United States Department of the Interior (Interior), using the contractor services of Arthur Andersen LLP (Andersen), conducted a reconciliation of the trust fund accounts of Plaintiff and other Tribes (Trust Reconciliation Project or TRP).

In the TRP, the Interior Department, through Andersen, collected and analyzed documents and data relating to Plaintiff's trust fund accounts for the 1972-1992 period. Upon completion of the TRP, Interior and Andersen presented the documents and data that they had compiled, as well as the analyses of those documents and data that they had conducted, about the Tribal trust fund accounts, to Plaintiff and other Tribes and to Congress, as required under the American Indian Trust Fund

Management Reform Act of 1994, codified at 25 U.S.C. ¶¶ 4001-61. Defendant believes that the TRP documents, data, analyses, and results that the Interior Department and Andersen furnished to Plaintiff in 1996, and that Defendant provided to Plaintiff again in 2007, formed the bases, in large part, of Plaintiff's claims about Defendant's alleged breach of its trust duties and responsibilities in this case and in Plaintiff's companion case in the District Court.

In addition, Phase I would address all of Plaintiff's claims regarding Defendant's alleged mismanagement of Plaintiff's non-monetary trust assets (including any claims relating to Plaintiff's land and other non-monetary trust assets and any claims about Defendant's alleged failure to obtain "fair market value" for Plaintiff or to "maximize" Plaintiff's trust revenues or returns), from 1972 to present. Dkt. No. 25 ¶¶ 46, 51.

2. *Phase II: Plaintiff's Trust Fund and Non-Monetary Trust Asset Mismanagement Claims From 1946 to 1972*

Phase II would include all of the same types of claims comprising Phase I, but for the period of 1946 to July 1, 1972. Defendant hopes that resolving the Phase I claims, whether through settlement or after trial, would facilitate the parties in settling the Phase II claims. Depending on the prospects for settlement, this Court may or may not place the Phase II claims on a trial track following the conclusion of Phase I.

3. *Phase III: Plaintiff's Taking Claim*

Phase III would adjudicate Plaintiff's claim that, in the pre-1946 era, Defendant allegedly paid inadequate compensation for Plaintiff's reservation land.

## III. PARTIES' REPORT PURSUANT TO RCFC APPENDIX A

Pursuant to the requirements of RCFC Appendix A, on July 28, 2008, counsel for the parties held a conference call as its early meeting of counsel. The following attorneys attended the meeting:

1. Counsel of Record for Plaintiff: Jennifer Henshaw McBee

2. Other Counsel for Plaintiff: David Pomeroy, Kennis M. Bellmard, II, Michael McMahan.

3. Counsel of Record for Defendant: Terry M. Petrie.

4. Other Counsel for Defendant: Jared S. Pettinato, United States Department of Justice; Jean Whyte, National Archives Records Administration.

Counsel for the parties discussed their positions on the several items set forth in RCFC Appendix A.

A. *Does the Court have jurisdiction over the action?*

<u>Plaintiff's Position</u>

The Court has jurisdiction over this action. As set forth in Part III.E., the Tribe disagrees with the Defendant that 28 U.S.C. § 1500 bars this Court's jurisdiction in this case. The Tribe also disagrees with the Defendant that a detailed specification of the Tribe's claims, beyond that outlined above and in the Amended Complaint, is necessary or warranted in this case.

<u>Defendant's Position:</u>

As stated above, 28 U.S.C. §1500 divests this Court of jurisdiction because Plaintiff has another case pending in the District Court for the Easter District of Oklahoma, *Seminole Nation of Oklahoma v. Kempthorne*, No. 06-cv-00556 (E.D. Okla. Dec. 29, 2006). Accordingly, § 1500 requires the Court (1) to dismiss this case in its entirety or (2) to dispose or limit the scope of certain claims. *See also* Part II of this JPSR, *supra*; Def.'s Mot. to Dismiss, Dkt. No. 52.

As also noted above, the statute of limitations, 28 U.S.C. § 2501, may bar some or all of Plaintiff's claims. Further, the Court may lack jurisdiction over those claims for which Plaintiff does not identify a substantive source of law, such as a statute, treaty, or regulation, because of Plaintiff's

failure to establish a specific fiduciary money-mandating duty or because of the exclusive jurisdiction of the Indian Claims Commission (ICC) over Plaintiffs' pre-1946 claims. In addition, depending on Plaintiff's detailed specification of its claims, Defendant may raise the defenses of claim preclusion, issue preclusion, or both.

Assuming, *arguendo*, that 28 U.S.C. § 1500 does not preclude the Court from exercising jurisdiction in this case, Defendant cannot determine which, if any, of Plaintiff's claims are time-barred, lack a jurisdictional basis, or implicate preclusion doctrines until after Plaintiff has provided a detailed specification of its claims and the factual and legal bases underlying those claims. Defendant may need to conduct some limited discovery related to the factual bases of Plaintiff's claims. Once Plaintiff has specified its claims, Defendant will file any appropriate jurisdictional motion.

B. *Should the case be consolidated with any other case and, if so, why?*

At this time, the parties do not believe this case should be consolidated with any other case.

C. *Should the Trial of Liability and Damages be Bifurcated, and if so, why?*

Plaintiff's Position:

If the issue of liability cannot be resolved by dispositive motions(s) and trial becomes necessary on the issue of liability, Plaintiff believes it would be appropriate to bifurcate the trial into liability and damages phases. Trial will likely be necessary on issues of monetary damages.

Defendant's Position:

To the extent that this Court does not dispose of this case in the entirety on jurisdictional grounds and that a trial is necessary, Defendant agrees with Plaintiff that it would be appropriate to bifurcate the trial into liability and damages phases. As to whether trial will likely be necessary on issues of monetary damages, Defendant believes that it is too early to determine definitively about the need for a trial on damages. Defendant proposes that the Court and the parties defer the determination about the need for a trial on damages until after they have determined issues of liability.

D. *Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?*

Plaintiff's Position:

The Tribe does not believe that further proceedings in this case should be deferred pending consideration of another case before this Court or any other tribunal. The Tribe opposes the Defendant's proposal that the Court stay proceedings in this case until after resolution of the Tribe's action in the United States District Court for the Eastern District of Oklahoma which seeks an accounting, but no monetary relief, from the United States. *Seminole Nation of Oklahoma*, No. 06-cv-00556 (E.D.Okla. Dec. 29, 2006).

The government argues below that it is appropriate to stay this proceeding pending resolution of the case pending before the United States District Court for the Eastern District of Oklahoma. The resolution of Eastern District action is still years away by any conservative estimate and there is no certainty that the action will produce an adequate accounting. The Tribe's accounting claim is one of many accounting claims pending throughout the federal courts. These lawsuits concern the accounting claims of a number of distinct tribal sovereigns. These suits follow the seminal

accounting suit brought by Individual Indian Money ("IIM") account holders in *Cobell v. Kempthorne*, No. 96-CV-1285-JR, which has been pending the United States District Court for the District of Columbia for twelve years and wherein the court recently determined that the Department of the Interior is unable to perform an adequate accounting. *See Cobell v. Kempthorne*, 532 F.Supp.2d 37, 103 (D.D.C. 2008).

There is no reasonable basis for deferring progress in the case at bar based on the hope that the Government, might, at some undefined point in time, produce an accounting that might provide the basis for informing the Tribes claims in this proceeding. The Tribe believes that deferring proceedings in this case is simply another means for delay that will prejudice its right to relief.

Defendant's Position:

As noted above, Plaintiff has filed a companion case to this action in the United States District Court for the Eastern District of Oklahoma. *Seminole Nation of Oklahoma v. Kempthorne*, No. 06-cv-00556 (E.D. Okla. Dec. 29, 2006). Assuming, *arguendo*, that 28 U.S.C. § 1500 does not divest this Court of jurisdiction, if litigation were to proceed in this Court along a track parallel and simultaneous to the District Court litigation, this Court would risk duplicating the factual and legal conclusions made in the District Court. That duplicative litigation would needlessly expend this Court's and the parties' limited resources and could introduce inconsistent rulings between federal tribunals. Defendant expects Plaintiff to ask both courts to address the nature and extent of the Defendant's accounting duty and to ask both courts to evaluate and to analyze the financial transactions that underlie the actions. This factual overlap significantly risks the possibility that this Court's rulings duplicating, conflicting with, or even contravening any ultimate determination that the District Court may make.

Moreover, Plaintiff alleges that Defendant has "failed to provide the Tribe with a full, accurate and timely accounting of the Trust Funds of the Tribe." Am. Compl. ¶ 23, *Seminole Nation of Oklahoma v. Kempthorne*, No. 06-cv-00556 (E.D. Okla. May 25, 2007), Dkt. No. 16. Plaintiff alleges that, by failing to provide an accounting, the United States "deprived [Plaintiff] of the information necessary to determine whether Trust Funds of the Tribe have been properly administered." *Id.* ¶ 34. Plaintiff contends that Defendant should be required to "provide the Tribe with a complete, accurate and timely accounting of all the Trust Funds" in order to "preserv[e] any claims which might be identified once that accounting is received." *Id.* ¶ 35. It would be inefficient for this Court to attempt to determine damages when Plaintiff is pursuing a companion case in which it seeks to obtain an accounting that Plaintiff alleges is necessary to determine whether that mismanagement occurred and the extent of those damages. Accordingly, if this Court finds that it has jurisdiction, it would most efficiently address the matter by staying the proceedings until after the District Court has resolved Plaintiff's companion case.

Plaintiff, itself, acknowledges the appropriate sequence for resolving its trust fund mismanagement claims in its Amended Complaint in its companion case in the District Court, by declaring that it needs the accounting, which it intends to obtain in the District Court, before it can determine its possible damages, which it intends to obtain in this Court. *See id.* ¶¶ 30, 35, *Prayer for Relief* ¶ 3. Plaintiff may complain about the relative lack of speed of the resolution of cases in the District Court, as it has done herein, but Plaintiff bears the ultimate responsibility, because it is Plaintiff who, among other things, has chosen to bring its trust accounting and trust mismanagement claims not only in this Court but also the District Court, and who has specifically sought declaratory

and injunctive relief from the District Court for the trust accounting that will affect significantly the resolution of Plaintiff's money damages claims in this case.

E. *In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?*

Plaintiff's Position:

The Tribe does not intend to seek any remand or suspension. The Tribe opposes the Government's suggestion that all proceedings in this case be suspended pending resolution of a motion to dismiss pursuant to 28 U.S.C. § 1500. In *Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645 (2007), the court concluded that this statute divested it of jurisdiction over a tribe's damages claim because that claim arose from the same operative facts and sought the same relief as the tribe's parallel filing in the district court. *Id.* at 659. In *Tohono,* however, the plaintiff tribe had requested some forms of monetary relief in the district court and then refused to remove those claims for relief when pressed by the Court of Federal Claims. In contrast, in this case, the Tribe has sought equitable relief in the district and has confined its request for a monetary remedy to this Court. The Government has filed a motion to dismiss this case pursuant to 28 U.S.C. § 1500, but there is no good reason for the Court to suspend all proceedings pending its resolution. Once again, the Government suggests the most time-consuming approach possible.

Defendant's Position:

Defendant respectfully refers the Court to the position that it set forth in response to Question D above. At a minimum, Defendant believes that the Court should suspend all proceedings pending the Court's resolution of Defendant's intended motion to dismiss pursuant to 28 U.S.C. § 1500 (except for possibly certain limited discovery about the timing of Plaintiff's filing of this case and its

companion case in the District Court, which Defendant may need to undertake before this court can rule on Defendant's motion). *See* Def.'s Mot. To Dismiss, Dkt. No. 52.

F. *Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.*

Plaintiff's Position

At this time, Plaintiff does not anticipate joining any additional party; however, it reserves the right to add additional parties should discovery reveal that the joinder of any additional parties is necessary and warranted.

Defendant's Position

Defendant does not anticipate joining any additional party.

G. *Does either party intend to file a motion pursuant to RCFC Rule 12(b), 12(c), or 56, and, if so, what is the schedule for the intended filing.*

Defendant has filed a motion to dismiss under 28 U.S.C. § 1500. If the Court is willing to entertain it, the parties have negotiated a mutually-acceptable briefing schedule for that the parties intend to propose to the Court. In that anticipated, unopposed motion, Plaintiff intends to propose October 14, 2008, as the due date for its Response and October 30, 2008, as the due date for Defendant's Reply.

Plaintiff's Position:

At the conclusion of Plaintiff's fact discovery and expert review pertaining to such discovery, Plaintiff would file a RCFC 56 motion on liability issues only. Furthermore, the Tribe opposes the Government's position that the Tribe should be compelled to file a detailed statement of its claims and damages. This request contravenes RCFC 8(a), which requires only a short and plan statement of the grounds upon which the court's jurisdiction depends and a short and plain statement of the claim

showing that pleader is entitled to relief. "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002).

Defendant's Position:

Defendant filed a RCFC 12(b)(1) motion to dismiss pursuant to 28 U.S.C. § 1500 on August 7, 2008. Dkt. No. 52. If this Court stays the litigation of this case, including the making of initial disclosures under RCFC 26 and any formal discovery efforts, pending its ruling on Defendant's motion, it would maximize judicial economy and efficiency and promote the conservation of scarce and valuable litigation resources.

If this Court finds that it has jurisdiction under § 1500, Defendant expects to raise other jurisdictional defenses through dispositive motions pursuant to RCFC 12(b) or RCFC 56 later, likely during each phase of the case. Because Plaintiff has stated such broad claims, Defendant cannot seek dismissal or summary disposition of some or all of the claims, until after the Court has compelled Plaintiff to detail its claims in the different phases of the case, including Phase I, to include (1) the identification of the particular rights-creating or duty-imposing sources of law underlying its claims, (2) the identification of the precise breaches or breaches of those duties that it alleges, (3) the concise statement of operative facts underlying or supporting Plaintiff's allegations that Defendant breached its trust duty or responsibilities to Plaintiff, and (4) a specification of the damages that it alleges that resulted from Defendant's alleged breach or breaches. Defendant's position is well-supported. *See, e.g.*, *Bell Atl. v. Twombly*, 127 S. Ct. 1955 (2007).

After Plaintiff has specified its claims, Defendant requests 120 days to engage in discovery to determine whether this Court has subject matter jurisdiction over the claims that Plaintiff has specified. Ninety days after completing this discovery, Defendant would raise its jurisdictional defenses by moving this Court pursuant to RCFC 12(b) or 56, if such motions would be appropriate.

If the Court allows Plaintiff to delay or to defer specifying its claims until after Plaintiff has promulgated its expert reports or has supplemented its detailed specification of claims after Plaintiff has promulgated its expert reports, the Court should extend, by a commensurate amount of time (1) the period for Defendant to take discovery to determine the basis, if any, for this Court's subject matter jurisdiction over the specified claims; and (2) the period for Defendant to file any jurisdictional motions.

H. *What are the relevant factual and legal issues?*

<u>Plaintiff's Position:</u>

The overarching legal issue is whether the United States breached its fiduciary duties as trustee with regard to the Tribe's trust funds. As of this filing, Defendant has not provided the relevant documents needed for Plaintiff to determine Defendant's specific breaches of trust duties and damages, as a result thereof. Depending upon the result of fact discovery and subsequent analysis of these documents by Plaintiff's experts, the legal may include, but are not limited to, whether the United States:

1. Failed to collect or timely collect amounts due and owing to the Tribe under leases, contracts and similar documents;

2. Failed to collect the full amounts that were statutorily or contractually required;

3. Failed to promptly deposit funds following receipts of payment;

4. Failed to obtain investment yields in accordance with the law;

5. Kept unreasonably large balances in a cash account;

6. Failure to deposit collected monies into the Tribe's (interest-bearing) trust accounts;

7. Incurred a disbursement lag time and lost interest due to the posting of the withdrawal of the funds from the account before checks had cleared the United States Treasury Department account on which it is drawn;

8. Failed to assess penalties for late payments;

9. Failed to increase commercial lease rental rates upon mandatory period reviews;

10. Failed to post corrections for known errors in the Tribe's trust accounts;

11. Failed to prevent negative interest from being charged against the Tribe's trust accounts;

12. Failed to prevent unauthorized payments for disbursement from the Tribe's trust accounts;

13. Failed to properly exercise its fiduciary duty in the administration and management of tribal non monetary trust resources and assets;

14. Made unsupported or otherwise improper disbursements; and

15. Must perform an accounting of the accounts held in trust for the Tribe, and provide the contents of such accounting.

The factual issues involve calculating the amount of damages as a result of the Defendant's breaches of trust.

Defendant's Position:

It is presently premature for Defendant to identify the factual and legal issues (including those for Phase I) that this Court may have to address at trial on liability or damages because the precise contours of those issues depend on jurisdictional rulings that Defendant plans to request from the Court. Although Plaintiff alleges fifteen activities by which Defendant failed to satisfy its fiduciary duties, Plaintiff has failed to identify a single lease, payment, deposit, penalty, mistake, incorrect disbursement, or other impropriety that would support its allegations. Without more specificity, Defendant cannot identify the facts that it expects to establish or determine the defenses that it plans to deploy.

Nonetheless, Defendant sets forth some factual and legal issues that are or may be relevant to the Court's jurisdiction over Plaintiff's claims in this case, including Phase I. Defendant does not intend this listing to be a complete or comprehensive identification of issues, and Defendant may revise it, depending upon certain events that may include such items as the discovery process.

1. Whether 28 U.S.C. § 1500 precludes jurisdiction in this case.

2. Whether the statute of limitations, 28 U.S.C. § 2501, bars some or all of Plaintiff's claims.

a. Whether Plaintiff's claims fall within the language of the Interior Appropriations Act (IAA), as the United States Court of Appeals for the Federal Circuit construed that language in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004). The IAA provides that a Tribe's claims related to loss or mismanagement of its trust funds shall not begin to accrue until the United States Department of the Interior has provided an accounting from which the Tribe can determine its losses. *See* Pub. L. No. 108-447, 118 Stat. 2809; and

b. Whether Plaintiff's claims accrued more than six years before the filing of this case.

3. Whether the Court has jurisdiction over Defendant's claims under the Tucker Act or the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1) and 1505.

a. Whether Plaintiff bases its claims on substantive sources of law, such as statutes, treaties, or regulations that establish specific fiduciary duties or other duties;

b. To the extent that Plaintiff bases its claims on specific duties established in substantive sources of law, whether breaches of those duties mandates the United States to pay compensation;

c. Whether Plaintiff has alleged that Defendant has failed to perform any specific money-mandating duties; and

d. Whether Plaintiff's claims were within the exclusive jurisdiction of the Indian Claims Commission.

4. Whether the doctrines of claim preclusion, issue preclusion, or both apply to bar any or all of Plaintiff's claims.

I. *What is the likelihood of settlement? Is alternative dispute resolution contemplated?*

Plaintiff's Position:

Plaintiff believes that the likelihood of settlement is relatively high considering the decisions by this Court and other federal courts on the issue of the Defendant's liability. The main issues will likely relate to Defendant's production of relevant documents necessary to support a settlement agreement with a specified amount of damages. Informal discovery thus far has been largely unproductive which is what prompted the Tribe to request the Court lift the stay. Plaintiff will

explore opportunities for settlement but believes that the most productive time for settlement will likely once fact discovery is well underway and the Tribe has had the opportunity to analyze the documents. The Tribe, however, does not seek formal ADR.

Defendant's Position:

The parties began exploring the possibility of settlement discussions shortly after the filing of this case. For that reason, on February 23, 2007, the parties filed a joint motion for temporary stay of litigation, so that they could continue exploring settlement discussions and continue engaging in the informal production of relevant or potentially relevant documents and data. Dkt. No. 5. Counsel for Plaintiff expressed its desire to withdraw from the temporary stay in a joint status report filed with the Court on February 27, 2008. Dkt. No. 21.

Defendant continues to believe that the parties may be able to settle informally or resolve, through ADR or other methods, Plaintiff's issues and claims in this case and in Plaintiff's companion case in the District Court, without protracted litigation. For that reason, it remains open to the possibility of further efforts with Plaintiff that would be aimed at reaching a mutually acceptable settlement in this matter. In Defendant's view, these efforts can and should include the use of a mediator or formal ADR, if such mechanisms help the parties reach settlement or otherwise resolve Plaintiff's claims. Accordingly, Defendant has been and continues to be willing to engage in formal ADR or informal measures, such as producing relevant or potentially relevant documents and data about Plaintiff's trust funds and non-monetary trust assets outside of the contexts of formal discovery or litigation to inform the parties in their settlement, ADR, or informal resolution process.

Defendant believes that Plaintiff has found informal discovery to be unproductive because Plaintiff has requested any and all documents, for all time periods, relating to its trust funds and non-

monetary trust assets, be produced at certain locations in Oklahoma, without detailing the particular documents or data or types of documents or data that would help inform or specify its claims. Plaintiff has not promulgated a single, targeted request for any documents or data. Therefore, Defendant has not been able to respond in a manner that Plaintiff has found productive, other than to explain to Plaintiff that a response to the kind of informal requests made by Plaintiff is unduly burdensome, oppressive, and unreasonable.

Defendant notes that, as a general matter, parties have difficulty conducting meaningful settlement or ADR discussions while they are actively preparing for trial.

J. *Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?*

Plaintiff's Position:

If the parties are unable to reach a settlement agreement, Plaintiff anticipates proceeding to trial. Plaintiff does not request expedited trial scheduling.

Defendant's Position:

At this point, it is unclear to Defendant whether Phase I or any other phases of this case will proceed to trial. As stated by Defendant in response to Questions A, G, and H, above, this Court may be able to resolve this case in whole or in part by ruling on dispositive motions. Moreover, as stated by Defendant in responding to Question I above, Defendant remains willing to discuss settlement, conduct ADR, or otherwise attempting to resolve informally Plaintiff's issues and claims without extended litigation–especially if this Court stays the litigation for that purpose.

If this case proceeds to trial, however, Defendant does not believe that this Court can hold an effective trial in an expedited manner. In any event, in the interest of judicial efficiency, economy, and conservation of resources, the Court should defer any scheduling of pre-trial proceedings, or of

the trial itself, until after Plaintiff has specification its claims in detail, the parties have briefed the jurisdictional issues related to the specific claims, and the Court has ruled on those jurisdictional issues. As discussed above, the jurisdictional issues include such threshold ones as whether Plaintiff has sufficiently shown Defendant owes money-mandating duties and whether the statute of limitations bars Plaintiff's claims.

K. *Are there special issues regarding electronic case management needs?*

The parties do not believe there are any special issues regarding electronic case management needs at this time.

L. *Is there other information of which the court should be aware at this time?*

Defendant is handling a total of 98 Tribal trust accounting and trust mismanagement cases (including this one) that have been brought in this Court and in the United States District Courts. There are currently about 53 cases (including this one) in the Court of Federal Claims; seven cases (including Plaintiff's companion case) in various United States District Courts in Oklahoma; and 38 cases in the United States District Court for the District of Columbia.

M. *Proposed Discovery Plan*

<u>Plaintiff's Position:</u>

The Tribe disagrees that discovery requires phases. The Tribe believes discovery should be completed within 365 days from the date of the Initial Disclosures required under RCFC 26. Additionally, the Tribe disagrees with Defendant's position that it is the responsibility of the Tribe to inspect and identify boxes for discovery purposes and then inspect the boxes and identify those documents it wishes to have produced. Further, generally, the Tribe would propose:

a. When disputes arise that relate to discovery, the parties shall attempt to informally resolve the agreement within fifteen (15) calendar days, and may grant an extension(s). If the parties cannot resolve the agreement within fifteen (15) days and any mutually agreed extension(s), then the aggrieved party may ask the Court for a motion to compel and any other relief.

b. The parties may not exceed ten (10) depositions per side without mutual agreement of the parties or leave of Court upon good cause shown.

c. The parties shall not depose any one deponent for more than one day and for over six hours that day, without prior agreement of the parties or leave of Court upon good cause shown.

d. The parties shall, whenever possible, consolidate depositions to avoid unnecessary travel; show conduct telephonic or video depositions; and/or shall conduct informal document exchange.

e. The parties may not exceed forty-five (45) interrogatories, including subparts, without prior agreement of the parties or leave of Court upon good cause shown.

f. The United States will, whenever possible, provide documents in electronic OCR format that may be searched electronically.

g. At the time that Defendant produces documents or promptly upon Plaintiff's request, Defendant, as Plaintiff's trustee, shall provide information that enables Plaintiff, its consultants, and/or experts to comprehend codes, procedures, terms of art, and other information in the documents that is unclear to a layperson. Plaintiff shall make every effort not to burden Defendant with requests.

h. Upon request by the Plaintiff, Defendant, as Plaintiff's trustee, shall from time to time, make available knowledgeable federal employees or contractors to provide, orally and/or in

writing, information that is relevant to the case, including but not limited to information that explains how Defendant has historically collected, managed, and disbursed tribal trust funds. Plaintiff shall make every effort not to burden Defendant with requests.

i. Documents that are relevant or potentially relevant to Plaintiff's issues and claims are stored in several facilities scattered around the country, including federal records repositories. Those documents may be found in boxes of retired federal records, as well as in active government files. Defendant shall comply with RCFC 34 and all other applicable Rules in producing and identifying the individual item or category of documents sought by Plaintiff. Plaintiff asserts that BISS reports and finding aids are insufficient to comply with the Court's discovery rules, and would seek resolution of that issue by the Court if Defendant disagrees.

j. As a trustee, the United States has "a duty to furnish the beneficiary on demand all information regarding the trust and its execution which may be useful to the beneficiary in protecting its rights, and to give the beneficiary facts which the trustee knows or ought to know would be important to the beneficiary." *White Mountain Apache Tribe of Ariz. v. United States*, 26 Cl. Ct. 446, 448 (1992)(citing G.T.Bogert, Trusts § 141, at 494 (6th Ed. 1987)); *accord Clifford v. United States*, 136 F.3d 144, 152 (D.C.Cir. 1998)(citing the Restatement (second) of Trusts § 173 (1957)) (noting that a trustee must provide the beneficiary receives any information necessary to protect his rights under the trust"). The presumptive limits on formal discovery imposed by the RCFC should therefore not apply to this litigation. Plaintiff anticipates that the scope and nature of its claims, and the fact that almost all of the factual information necessary to support those claims is in the possession of the United States as trustee, may make additional interrogatories, depositions, and other forms of both formal and informal discovery necessary.

Defendant's Position:

At the Early Meeting of Counsel conducted pursuant to Appendix A of the Court's Rules, Defendant objected to providing the initial disclosures required under RCFC 26(a)(1) on the grounds that, in the circumstances of this case, it is a better use of resources and time to have the Court rule upon Defendant's Motion to Dismiss under 28 U.S.C. § 1500. Nevertheless, it intends to provide the initial disclosures timely.

If this Court rules that 28 U.S.C. § 1500 does not bar its jurisdiction and the litigation proceeds, discovery in this case should proceed in three distinct stages and should be conducted in accordance with the RCFC.

The first stage would consist of the factual discovery that Plaintiff needs to delineate and define the claims it raises. This Court should limit that discovery to document productions, interrogatories, and requests for admission.

As counsel for the parties have discussed, documents that are relevant or potentially relevant to Plaintiff's issues and claims herein are located at multiple locations that include federal records repositories around the country. Those documents may be found in hundreds and possibly thousands of boxes of retired federal records and active government records. So that Defendant may respond to Plaintiff's discovery requests adequately, Defendant proposes the following process:

1. The parties identify the boxes that may contain responsive documents;

2. The Solicitor's Office of the Interior Department conducts a pre-inspection privilege review of the identified boxes;

3. Plaintiff's counsel and/or its designees inspect the boxes and identify those documents that it wishes to be produced; and

4. Defendant images, codes, and conducts a post-inspection privilege review before producing the images of the requested documents to Plaintiff, pursuant to the confidentiality protective order that the parties negotiated and that this Court approved.

Based on Defendant's experience in other Tribal trust accounting and trust mismanagement cases, depending on the documents that Plaintiff requests, it likely will take longer than 270 days to complete this production process. Based upon Plaintiff's representation that it will not insist on such measures as a document confidentiality review before production to Plaintiff, Defendant may be able to complete its production process within 270 days of receiving Plaintiff's production request. Until Plaintiff propounds document or other discovery requests, Defendant is unable to estimate accurately the amount of time that the Court should allow to complete discovery for this first phase of discovery. For purposes of a proposed scheduling order, however, Defendant proposes 360 days for completion of the initial phase of discovery.

The second stage of discovery would begin after Plaintiff files a specific statement of its claims. This stage would be limited to the fact discovery pertinent to Defendant's jurisdictional challenges (*e.g.*, whether Plaintiff's claims accrued more than six years before the filing of this litigation). Although it is difficult to predict the extent of that discovery at this time, *i.e.*, before Plaintiff has detailed the specifics of its claims, Defendant proposes, for purposes of preliminary planning, that the second phase proceed for 120 days. Within 90 days of the conclusion of this discovery, Defendant would make a determination about the feasibility of dispositive motions raising its jurisdictional defenses and make the appropriate motion(s) or otherwise act thereupon.

After the Court resolves the jurisdictional issues and if it finds a jurisdictional basis for proceeding with this litigation, Defendant proposes that the parties confer to schedule the third or

final stage of discovery and to propose a schedule for that discovery to the Court. During this phase, the parties would conduct any remaining fact discovery, which would include fact or RCFC 30(b)(6) depositions, based on the specific claims (if any) that have survived Defendant's jurisdictional challenges. In addition, the parties would conduct expert witness discovery and otherwise prepare the case for trial.

In Defendant's past experience with other Tribal trust accounting and trust mismanagement cases involving similar complex breach of trust claims, a plaintiff's full articulation of its claims, as well as the legal and factual bases for those claims, typically does not occur until after the plaintiff has disclosed its expert witnesses. Accordingly, as soon as Defendant obtains Plaintiff's expert witness disclosures, Defendant will likely need to conduct further research to identify and develop evidence from voluminous retired records, not only to rebut Plaintiff's claims but also to support Defendant's own expert analyses. Without sufficient time to conduct this additional research, Defendant would be prejudiced in its ability to prepare and present an adequate defense at trial. Therefore, to foreclose this kind of prejudice, Defendant proposes that its expert witness disclosures be required no less than 180 days after Plaintiff's expert disclosures.

Date: August 14, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General

<u>*s/ Terry M. Petrie*</u>
TERRY M. PETRIE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout Street, 8th Floor
Denver, CO 80294
Tel: (303) 844-1369
Fax: (202) 353-2021
Terry.Petrie@usdoj.gov

Attorney of Record for Defendant

OF COUNSEL:

ANTHONY P. HOANG
JARED S. PETTINATO
United States Department of Justice
Environment and Natural Resources Division
Natural Resource Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0241
Tel: (202) 305-0203
Fax: (202) 353-2021
Anthony.Hoang@usdoj.gov
Jared.Pettinato@usdoj.gov

SHANI N. WALKER
JOSHUA A. EDELSTEIN
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

THOMAS KEARNS
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

<u>*s/ Jennifer Henshaw McBee*</u>
*by s/ Terry M. Petrie, pursuant to written authorization provided on August 11, 2008*

Jennifer Henshaw McBee, OBA #19170
ANDREWS DAVIS
A PROFESSIONAL CORPORATION
Attorneys and Counsellors at Law
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Tel: (405) 272-9241
Fax: (405) 235-8786

Attorney of Record for Plaintiff

OF COUNSEL:

David Pomeroy, OBA # 7209
Kennis N. Bellmard, II, OBA #13965
Michael D. McMahan, OBA #17317
ANDREWS DAVIS
A PROFESSIONAL CORPORATION
Attorneys and Counsellors at Law
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Tel: (405) 272-9241
Fax: (405) 235-8786
www.andrewsdavis.com